**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

Anthony Serra,

      on behalf of himself and all others
      similarly situated,

                              *Plaintiff*,

                v.

New England Patriots LLC,

                            *Defendant*.

Civil Action No. 4:24-cv-40022-MRG

---

### NEW ENGLAND PATRIOTS LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

    A.  VPPA Background................................................................................................ 3

    B.  The Patriots Offer a Free Service That Engages Fans with the Patriots Franchise ........... 4

    C.  The Complaint Alleges That the Patriots App Transmits Geolocation Data to Rover and Anvato, But Not Data That Identifies an Individual ........................................ 4

ARGUMENT ................................................................................................................... 6

    A.  Plaintiff Is Not a Consumer Under the VPPA ........................................................ 6

    B.  Plaintiff Does Not Allege Disclosure of Personally Identifiable Information................... 8

        i.  Rover Does Not Collect Personally Identifiable Information....................................... 9

        ii.  Anvato Does Not Collect Personally Identifiable Information or Link Such Information to An Individual ....................................................................... 11

    C.  The Complaint Does Not Allege "Knowing" Disclosure of Personally Identifiable Information ..................................................................................................... 14

    D.  The App's Alleged Use of the Anvato API Is "Incident to the Ordinary Course of Business" and Thus Outside the Reach of the VPPA. ...................................... 16

    E.  The Patriots' Use of Rover's API Is in Accordance with the VPPA's "Marketing" Exception ...................................................................................................... 19

    F.  Plaintiff's Claims Must Be Dismissed Because the Statute of Limitations Has Expired......................................................................................................... 20

CONCLUSION................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Sunshine, Inc.* v. *Carl*,
    663 F.3d 27 (1st Cir. 2011) ...................................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................................14, 15

*Eichenberger* v. *ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .....................................................................................2, 9, 12

*Ellis* v. *Cartoon Network, Inc.*,
    No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on
    other grounds*, 803 F.3d 1251 (11th Cir. 2015) .................................................................7, 12

*Ellis* v. *Cartoon Networks, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) .............................................................................................3

*Freeman* v. *Town of Hudson*,
    714 F.3d 29 (1st Cir. 2013) ...................................................................................................19

*Giragosian* v. *Ryan*,
    547 F.3d 59 (1st Cir. 2008) .....................................................................................................6

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) .................................................................................8, 14

*Leslie* v. *Thompson Reuters Corp.*,
    No. 22-cv-07936 (Sept. 22, 2023 S.D.N.Y.)............................................................................2

*Louth* v. *NFL Enterprises LLC*,
    No. 1:21-CV-00405-MSM-PAS, 2022 WL 4130866 (D.R.I. Sept. 12, 2022) ...................8, 15

*A.G. ex rel. Maddox* v. *Elsevier, Inc.*,
    732 F.3d 77 (1st Cir. 2013) .....................................................................................................6

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)........................................................................................2, 9, 12

*Perry* v. *Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) ...............................................................................................2

*Rancourt* v. *Meredith Corp.*,
    No. 22-CV-10696-ADB, 2024 WL 381344 (D. Mass. Feb. 1, 2024) ........................16, 17, 18

*Robinson* v. *Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) ........................................................12, 13, 14

*Rodriguez* v. *Sony Comput. Ent. Am., LLC*,
    801 F.3d 1045 (9th Cir. 2015) ........................................................................16, 19

*Sterk* v. *Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ................................................................................16

*Yershov* v. *Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ........................................................................ *passim*

*Yershov* v. *Gannett Satellite Info. Network, Inc.*,
    No. 1:14-cv-13112 (D. Mass. Mar. 27, 2017) ........................................................2

**Statutes**

18 U.S.C. § 2710 ........................................................................................... *passim*

**Other Authorities**

*Anvato, Google's complete OTT video platform, now on Google Cloud Platform*,
    Google (Feb. 8, 2017), https://cloud.google.com/blog/topics/inside-google-
    cloud/anvato-googles-complete-ott-video-platform-now-google-cloud-
    platform ..............................................................................................................17

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1

James R. Schmidt, Jr., BSME, *GPS Coordinates: How Many Decimal Places Do
    You Need?*, DJS Associates, https://www.forensicdjs.com/blog/gps-
    coordinates-many-decimal-places-need ..............................................................14

Defendant, New England Patriots LLC, hereby files this memorandum of law in support of its motion, under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint.

## PRELIMINARY STATEMENT

Plaintiff alleges that he watched free videos of football news conferences on the Patriots' mobile application (the "App") and that the App collected information about the videos he watched and his location. Plaintiff articulates no harm from the disclosure of the name of those videos. He contends that the Patriots disclosed that information to two contractors and speculates that those contractors could have combined his geolocation data with information about his video views to identify him specifically. Plaintiff's allegations begin and end there. He does not allege that the Patriots disclosed his name, email address, or other classic identifying information. He does not claim Defendant or its contractors are able to or did identify him, or that he would have done anything differently if he knew such information was transmitted to these contractors. Nor does Plaintiff adequately allege that the Patriots *knew* those contractors could identify him. In fact, Plaintiff alleges that the App only collected geolocation if a user provided permission. On such threadbare facts, Plaintiff fails to allege a violation of the Video Privacy Protection Act ("VPPA").

This is the latest of hundreds of copycat strike lawsuits alleging that the use of industry standard third-party video delivery and marketing applications, which transmit generic, anonymized data, violates the VPPA. The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). And while the First Circuit held that collection from a free mobile application user of (i) geolocation information with 16 feet of accuracy, (ii) a unique identifier that could be "linked" to an individual's profile, and (iii) the titles of videos a user watches could violate the VPPA, that case has been largely confined to its unique facts. *See*

1

*Yershov* v. *Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016). Since *Yershov*, every circuit to have considered whether collection of similar data under analogous circumstances violates the VPPA has distinguished that decision. *See Perry* v. *Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir. 2017) (user of free mobile application not a consumer under the VPPA); *Eichenberger* v. *ESPN, Inc.*, 876 F.3d 979, 985-86 (9th Cir. 2017) (device serial number not PII under the VPPA); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 289-90 (3d Cir. 2016) (IP address not PII under the VPPA). A decision from the Second Circuit is expected shortly in another of these copycat lawsuits. *See, e.g.*, Order, ECF No. 60, *Leslie* v. *Thompson Reuters Corp.*, No. 22-cv-07936 (Sept. 22, 2023 S.D.N.Y.) (staying case until circuit decision). And following the First Circuit decision, Yershov withdrew his claims, conceding he was unable to demonstrate that defendants used the information it collected to identify him. Stipulation of Dismissal, ECF No. 83, *Yershov* v. *Gannett Satellite Info. Network, Inc.*, No. 1:14-cv-13112 (D. Mass. Mar. 27, 2017).

Ultimately, the facts alleged in Plaintiff's Complaint differ materially on pivotal issues necessary to the *Yershov* decision. For example, unlike Yershov, Plaintiff here does not allege that he was required to, or did, provide his geolocation in order to access the Patriots' App. And the specific data elements at issue here—geolocation data allegedly accurate within 40 feet, a string of numbers that is not alleged to be "linked" to a profile of Plaintiff, and a string of numbers representing the videos a user views—are materially different from those at issue in *Yershov*.

Even under *Yershov*, Plaintiff's Complaint fails to allege a violation of the VPPA.

*First*, Plaintiff does not qualify as a "consumer"—defined, as relevant under the VPPA here, to mean a "subscriber"—because he subscribed to nothing to access the Patriots' free App and, unlike *Yershov*, does not allege he was required to provide his geolocation data (he was not).

*Second*, the Complaint does not adequately allege the collection of "personally identifiable information" ("PII") because the generic data collected—a user's geolocation data, a device ID, and a string of numbers that supposedly identifies video titles—can neither be used to identify an individual nor the videos they watch. And lacking entirely from the Complaint is any plausible allegation that the two can be linked. Instead, Plaintiff relies on the same subjunctive "ifs," "buts," and "maybes" that the First Circuit condemned as "unforeseeable detective work" in *Yershov*.

*Third*, Plaintiff's Complaint contains no facts to support Plaintiff's contention that the Patriots "knew" what its contractors were doing behind the scenes. Plaintiff points to a dashboard summarizing the data one of the contractors allegedly collects from users, but that dashboard, incorporated into the Complaint by reference, displays only aggregate, anonymized data. Those threadbare allegations are insufficient to allege a knowing violation of the law.

*Fourth*, even if Plaintiff could allege a VPPA violation, the VPPA contains express exemptions for video-delivery systems and for marketing directly to the consumers.

Finally, Plaintiff's Complaint must be dismissed because Plaintiff downloaded the App nearly five years ago—long past the two-year statute of limitations under the VPPA.

Any one of these reasons is fatal to Plaintiff's Complaint, which must be dismissed.

## STATEMENT OF FACTS

### A.    VPPA Background

Congress enacted the VPPA in response to the publication of the "titles of 146 films" D.C. Circuit Judge Robert H. Bork and his family "had rented from a local video store." *Ellis* v. *Cartoon Networks, Inc.*, 803 F.3d 1251, 1252 (11th Cir. 2015) (citation omitted). In order to prevent that type of disclosure, Congress passed the VPPA, which prohibits "video tape service provider[s]" from knowingly disclosing, to a third party, "personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b).

**B.      The Patriots Offer a Free Service That Engages Fans with the Patriots Franchise**

The Complaint alleges that the Patriots developed, own, and maintain the Patriots' App, which provides access to free content, including articles, videos, audio content, news, the Patriots' schedule, and information about the team. Compl. ¶ 30 (including picture of App). The singular video Plaintiff identifies in the Complaint—one of the Patriots' former head coach at a news conference titled "Bill Belichick 1/2: 'It's a one game season for us'"—is just the sort of generic, harmless video content that says nothing about an individual. To the extent it says that the individual is interested in the Patriots (as most of the proposed class must be), that could be gleaned from his decision to download the App and is data that in no way violates the VPPA.

The Complaint alleges that in 2019, Plaintiff Anthony Serra downloaded the App on his mobile phone and at an unspecified time thereafter watched multiple videos on the App. *Id.* ¶ 7. Plaintiff does not allege that he was required to log in or submit any information to access any of the content on the App, and in fact contends that users do not need to provide their name, email address, or other identifiable information to access such content. *Id.* ¶¶ 18-19. Nor does the Complaint allege that users generally or Plaintiff specifically were required to or did provide consent to share location data with the App to access its free video content.

**C.      The Complaint Alleges That the Patriots App Transmits Geolocation Data to Rover and Anvato, But Not Data That Identifies an Individual**

Plaintiff alleges that the Patriots' App incorporates the Rover and Anvato Application Programming Interfaces ("APIs"). According to the Complaint, Anvato provides a "fully managed, end-to-end video processing and management platform for signal acquisition, live and video-on-demand editing, hybrid encoding, social and premium syndication, dynamic ad insertion, authenticated playback, video analytics and player SDKs across all connected devices." *Id.* ¶ 29. And meanwhile, the Complaint alleges that the Patriots use Rover to target advertisements. *Id.*

¶ 51. The Complaint alleges that Rover can only target "appropriate fans" through "geographic location, device type, [and] seat section," but does not allege that Rover can target or even *identify* specific individuals with its advertising. *Id.*

The Complaint alleges that the Patriots App transmits to Anvato (i) geolocation data with 40 feet of specificity, *id.* ¶ 37; (ii) an Android Advertising ID, *id.* ¶ 38; and "information about the video content viewed by users of the App," *id.* ¶ 42. Similarly, the Complaint alleges that the Patriots App transmits to Rover (i) precise geolocation data (until October 2023), *id.* ¶ 52; (ii) a unique string identifying each user's device, *id.* ¶ 54; and (iii) the title of videos that users watch, *id.* ¶ 52. Nowhere does Plaintiff allege that the Patriots shared a user's name, email address, or other similarly identifying details with third parties. Rather, the Complaint alleges that Google (Anvato's corporate parent), *not* Defendant, may use geolocation information to "uniquely identify [] users." *Id.* ¶ 36. The Complaint makes no similar allegation as to Rover, instead generally alleging that Rover uses a unique device identifier to "identify each user's device." *id.* ¶ 54.

Plaintiff's limited allegations do not explain how Google can reverse engineer an individual's precise location and match that up with the videos they watch. Plaintiff alleges that "Google's Anvato provides a dashboard that transparently shows what information Google is collecting, analyzing, and aggregating. This includes what users are watching and where they are watching from." *Id.* ¶ 43. But the screenshot of the dashboard incorporated in the Complaint contradicts Plaintiff's assertion. *See* Ex. A. The dashboard does not connect location with video content, but shows these pieces of information on separate displays. *Id.* at 1. Plaintiff does not allege they can be linked. Moreover, the data on the dashboard is aggregated. *See id.*

The Complaint speculates that Google is able to cross-reference the data it collects with user profiles in order to identify individuals and the videos they watched. The Complaint does not

allege specific facts to support that Google actually possessed or used Patriots data in that manner—or that Defendant was aware of this conduct.

While Plaintiff alleges that Anvato uses the data it receives to fill the App's commercial breaks, nowhere does he even allege that the App contains commercial breaks in videos or targeted third-party advertisements. Compl. ¶ 61. And there is no allegation as to Rover's use of the data for targeted advertising. *See, e.g.*, *id.* ¶¶ 59-64 (all allegations pertaining to Anvato).

## ARGUMENT

When evaluating a motion to dismiss, "the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited),'" and then "determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *A.G. ex rel. Maddox* v. *Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (internal citations omitted).[1] To state a claim under the VPPA, Plaintiff must plausibly plead sufficient facts demonstrating that (1) they are a consumer; (2) the Patriots qualify as a video tape service provider; and (3) the Patriots knowingly disclosed (4) personally identifiable information, (5) in a manner that falls outside of the VPPA's statutory exceptions. *See, generally* 18 U.S.C. § 2710. Plaintiff's Complaint fails to allege each of the elements of a VPPA claim.[2]

### A.    Plaintiff Is Not a Consumer Under the VPPA

To state a claim under the VPPA, Plaintiff must first qualify as a "consumer," which is defined as a "renter, purchaser, or subscriber of goods or services from a video tape service

---

[1] The Court may consider "documents incorporated by reference in [the Complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian* v. *Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (internal citation omitted).

[2] The Patriots reserve the right to assert that they are not a "video tape service provider" under the VPPA.

provider." 18 U.S.C. § 2710(a)(1). Plaintiff does not allege that they are a "renter" or "purchaser" of video tape services (or, for that matter, any services provided by the Patriots). Rather, Plaintiff's sole allegation is that they downloaded the Patriots' App and then used the App to view free and unrestricted content that did not require any sign-in. *See* Compl. ¶ 82.

But downloading a free app to watch unrestricted content does not make Plaintiff a "subscriber" under the VPPA. In *Ellis* v. *Cartoon Network, Inc.*, the Eleventh Circuit explained that while the term "subscriber" need not require monetary payment, it must involve "some type of commitment, relationship, or association." 803 F.3d 1251, 1256 (11th Cir. 2015). After noting that the plaintiff "simply watched video clips on the CN app, which he downloaded onto his Android smartphone for free," the Court concluded that "downloading of an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber.'" *Id.* at 1257.

The First Circuit considered the same question, but involving "quite different[] facts" in *Yershov* v. *Gannett Satellite Inf. Network, Inc*, 820 F.3d 482 (1st Cir. 2016). There, the plaintiff downloaded a free mobile application, but "[t]o use the App, Yershov did indeed ***have to*** provide Gannett with personal information, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections." *Id.* at 489 (emphasis added). Though the question was "close[]," the Court ultimately narrowly held that "the transaction described in the complaint," plausibly alleged "consumer" status under the VPPA. *Id.* at 487-90.

The allegations in this case are materially different. The *Yershov* court considered it critical that Yershov could not opt out of providing precise geolocation information. *See id*. at 489. Rather, providing geolocation data was a condition of access to Gannett's App. The same is not true here. The Complaint alleges that the Patriots' App only collected geolocation information "when a user had location services enabled." Compl. ¶ 52. It does not allege that Plaintiff was required to provide

that consent to access video content. Thus, unlike *Yershov*, the Complaint does not allege that users are required to provide personal information as "consideration" for accessing video content on the App and thus, they do not qualify as "consumers" under the VPPA. *Cf. Yershov*, 820 F.3d at 489.

The Complaint fails for a separate reason: it concedes that the App only collects geolocation data "when a user had location services enabled," Compl. ¶ 52, but does not allege that Plaintiff had location services enabled on the App—which requires providing consent for such tracking. Rather, the Complaint generally alleges that the App *could* collect such data from unidentified App users who consented. The Complaint thus fails to allege that Plaintiff specifically is a consumer (or, for the same reason, that the Patriots collected PII from Plaintiff specifically). Plaintiff's Complaint must therefore be dismissed.[3]

### B. Plaintiff Does Not Allege Disclosure of Personally Identifiable Information

The VPPA only prohibits disclosure of PII, which is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). There are three elements to that definition. First, the disclosure must "identi[fy] a person." *Id.* Second, the disclosure must identify the "specific video materials or services" that person requested or obtained. *Id.* And most importantly, the disclosure must "link" the two to an individual. *Yershov*, 820 F.3d at 486. A VPPA claim requires each: "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).

---

[3] Plaintiff's Complaint is an analogue of another strike suit against the National Football League ("NFL") for disclosing similar data to Anvato. Though the NFL's motion to dismiss was denied, the parties did not brief and the Court did not consider this issue. *See Louth* v. *NFL Enterprises LLC*, 2022 WL 4130866 (D.R.I. Sept. 12, 2022).

In *Yershov*, the First Circuit held that the term "personally identifiable information" in the VPPA includes "information reasonably and foreseeably likely to reveal which . . . videos [the plaintiff] has obtained." 820 F.3d at 486. Yet the Court strongly cautioned against expanding that term to include information with "too uncertain" a "linkage" to identity, or which might be "too dependent on too much yet-to-be-done, or unforeseeable detective work." *Id*. Rather, the "linkage, as plausibly alleged," must be "both firm and readily foreseeable to [the defendant]." *Id*. The panel held that a combination of three datapoints—precise geolocation (within 16 feet of specificity), an Android ID number, and video title information—could be used by Adobe and its "game program" "to link the GPS address and device identifier information to a certain person by name." *Id.*

Plaintiff's Complaint fails to allege that either Anvato or Rover (1) collects information that "identifies a person," or (2) that Anvato or Rover can link such identifying information to information about the videos that person requests.

### i.    Rover Does Not Collect Personally Identifiable Information

First, the Complaint fails to allege that the "unique string" that Rover collects can be used to identify an individual. In *Yershov*, the First Circuit held that such identification required a *combination* of three different types of data—precise geolocation information, an Android ID number, and video title information. 820 F.3d at 486. The Complaint does not allege an analogous combination. Instead of an Android ID, Plaintiff alleges that Rover collected a "unique string to identify each user's device." Compl. ¶ 54. A "unique string" is precisely the kind of data that courts have routinely held does *not* identify an individual. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (holding that the VPPA does not apply to disclosures of IP address); *Eichenberger* v. *ESPN, Inc.*, 876 F.3d 979, 986 (same with respect to device ID).

Whereas the *Yershov* Court credited the allegation that Android ID could be used "to identify and track specific users across multiple electronic devices" and that Adobe used that ID

to "create user profiles comprised of a given user's personal information, online behavioral data, and device identifiers," 820 F.3d at 484, here no such allegations exist. Nor can they, because unlike a persistent device identifier, which can be used to build a profile, the Complaint concedes that Rover collects an ID number that is unique *to Rover*. The Complaint thus fails at the first step.

Second, as to the required "linkage," Plaintiff's Complaint also relies on the same "unforeseeable detective work" that the First Circuit criticized in *Yershov* and thus fails to allege that Rover can identify an individual as having requested or obtained specific video content. 820 F.3d at 486. The Complaint tellingly lacks any allegations that Rover can or does collect any information that connects an individual's GPS coordinates or unique identifier with the video information collected by the App. Rather, the Complaint contains the bare allegation that "[t]he Rover API gives Defendant the ability to ingest usage data from users who download the App in order to target them with advertising based on that data." Compl. ¶ 51. That conclusory allegation presents the very kind of speculative theory that the First Circuit foreclosed in *Yershov*.

Nor does Plaintiff allege that the Patriots actually *use* the data Rover collects to target advertisements. Plaintiff generally alleges that data can be used to target in-video commercials, but the Complaint does not even allege that the Patriots utilize commercial breaks in their videos (they do not). And most notably, the section of Plaintiff's Complaint that alleges that "Defendant shares its users' PII with Google ***and Rover*** to increase advertising revenue and metrics analyzing" describes only allegations concerning Anvato, ***not Rover***. *See* Compl. ¶¶ 59-64 (emphasis added). Plaintiff thus fails to allege that Rover "links" an individual's identity to the specific video content they request.

###### ii.     Anvato Does Not Collect Personally Identifiable Information or Link Such Information to An Individual

The Complaint also fails to allege that Anvato can link PII it allegedly collects to an individual, or that the information it allegedly collects even qualifies as PII.

Plaintiffs' Complaint contains no well-pleaded facts to support a reasonable inference that Google's Anvato API has a "game program" as in *Yershov* to link an individual to information about the videos they watch and instead relies on the "unforeseeable detective work" the First Circuit condemned. *See* 820 F.3d at 486. Plaintiff asserts that the Patriots App shares with Google information about the video content viewed, users' geolocation, and unique Android Advertising ID ("AAID"), but does not allege that Google actually combines these discrete pieces of information into a profile that ultimately "enabl[es]" it "to identify and track the specific videos viewed by the user." *See* Compl. ¶¶ 31-42. Plaintiff offers only that the Anvato API is hypothetically *capable* of this conduct. *See, e.g.*, *id*. ¶ 37 ("Anvato API *can* receive a user's precise geolocation within more than three decimal places of accuracy." (emphasis added)); *id*. ¶ 40 ("Companies *can* use AAID data to generate inferences about an individual's identity, preferences, and affiliations, such as their political or religious affiliations, sexuality, and media preferences." (emphasis added)).

To be sure, the Complaint identifies various Anvato services that the Plaintiff speculates could link an individual with specific video content, including Perceptual Signature and OnTarget Monetization, but the Complaint neither alleges that the Patriots use those services nor makes clear how, behind the scenes, these technologies can "uniquely identify . . . users." *See id*. ¶¶ 36, 43-47. While the Complaint alleges that these services can be used for in-video commercials or to deliver programmatic advertising, the Complaint fails to allege that the Patriots App *has* any in-video commercials or programmatic advertisements (it does not). In contrast, the *Yershov* complaint

11

included a detailed accounting of how Adobe allegedly took information the defendant sent "and other information culled from a variety of sources to create user profiles" or "digital dossiers"—comprising "personal information, online behavior data, and device identifiers." *See Yershov*, 820 F.3d at 484-85. Without that detail, Plaintiff's allegations require the exact "unforeseeable detective work" that *Yershov* denounced. *See id.* at 486; *see also Eichenberger*, 876 F.3d at 985 ("[T]he statute views disclosure from the perspective of the disclosing party. It looks to what information a video service provider discloses, *not to what the recipient of that information decides to do with it*." (emphasis added)). Finally, Plaintiff fails to explain how Anvato's "dashboard," which allegedly displays "information Google is collecting, analyzing, and *aggregating*," Compl. ¶ 43 (emphasis added), creates a reasonable inference that Google pinpoints individual users' identities in a disaggregated manner. "[I]f virtually all information can, in the end, be identifying, it is hard to conceive of a case in which a disclosure would not be considered" a violation of the VPPA. *See Robinson* v. *Disney Online*, 152 F. Supp. 3d 176, 181 (S.D.N.Y. 2015).

Since *Yershov*, other Circuits have weighed in, criticizing the same "unforeseeable detective work" that the First Circuit condemned and further clarifying the definition of PII. *See In re Nickelodeon*, 827 F.3d at 289. In particular, those courts have held that the information covered by the VPPA should be limited to "the kind of information that would readily permit an *ordinary person* to identify a specific individual's video-watching behavior." *Id.* at 290 (emphasis added). In *Eichenberger*, the Ninth Circuit held that a Roku device serial number and the names of videos that the plaintiff allegedly watched does not "readily permit an ordinary person" to discern an individual's video-watching behavior. *Id.* at 985 (quoting *In re Nickelodeon*, 827 F.3d at 267); *see also Robinson*, 152 F. Supp. 3d at 182 (explaining that video views and a hashed Roku serial number are insufficient to constitute PII, which must "itself identif[y] a particular person as

having accessed specific video materials"); *Ellis* v. *Cartoon Network, Inc*., No. 1:14-CV-484-TWT, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (ruling that PII was not disclosed when the third-party recipient of Android ID and viewing history had to "take extra steps to connect the disclosure to an identity" by "collect[ing] information from other sources"), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015).

Neither does the Complaint allege that Anvato collects information that identifies the "specific video materials" Plaintiff watched or requested. *Robinson*, 152 F. Supp. 3d at 182. The VPPA focuses on "the information actually 'disclos[ed]' by a 'video tape service provider,' which must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Id*. (quoting 18 U.S.C. § 2710(b)(1)). However, the "searchable, sortable sequence of numbers" Anvato allegedly receives in lieu of the video title, Compl. ¶¶ 44-45, is not alleged to identify "specific video materials" in and of itself. *See Robinson*, 152 F. Supp. 3d at 182. Instead, according to documents cited in the Complaint, Anvato relies on "patent pending computer machine vision" and "scalable vision search" to translate the "human perception of the video" by processing "the scenes, the objects, and their movements" into numbers. Compl. ¶ 45 n.20.[4]  Using that numerical string, Plaintiff then alleges that "Google can and does uniquely identify video titles." *Id*. ¶ 47. Thus, in contrast to the *Yershov* plaintiff's alleging direct sharing of video title, Plaintiff here alleges only a string of numbers—a far more tenuous linkage to data "most people" could "identify." *Yershov*, 820 F.3d at 486. In addition, the PII Plaintiff alleges the Patriots transmitted to Anvato differs from the information in

---

[4] Compl. ¶ 45 & n.20 (citing *ContentID*, Anvato Knows, https://web.archive.org/web/20151011052405/http://www.anvato.com/technology/contentid/ (archived Oct. 11, 2015 by Wayback Machine)). *See* Ex. B.

*Yershov*. There, Yershov alleged that the defendant collected his precise "GPS location" which was accurate to within 16 feet. *See id*. at 486 n.3. By contrast, Plaintiff alleges Anvato's API operates far less precisely, with "about" 40 feet of accuracy, or nearly three times the distance at issue in Yershov.[5] In sum, Plaintiff's Complaint does not plausibly allege that the Patriots' App discloses PII under the VPPA.

### C.   The Complaint Does Not Allege "Knowing" Disclosure of Personally Identifiable Information

The VPPA imposes liability only for "knowing[]" disclosures of PII. 18 U.S.C. § 2710(b)(1). "[T]he term 'knowingly' connotes actual knowledge." The conduct cannot "be merely voluntary in the minimal sense of the defendant's being aware of what he or she is doing and . . . not act[ing] because of some mistake or accident." *In re Hulu*, 86 F. Supp. at 1095 (internal quotation marks and citation omitted). Even assuming Plaintiff pleaded facts sufficient to support allegations that the App disclosed PII, he offers mere conclusions that the Patriots "knowingly and intentionally discloses . . . user's [sic] PII to Google['s Anvato] and Rover." Compl. ¶ 27. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

Plaintiff alleges that Anvato provides a dashboard of "aggregat[e]" data and that certain of Google's services are together capable of "match[ing] video content to prospective advertising." Compl. ¶¶ 43-47. But Plaintiff directs the Court to a webpage that shows sample dashboards depicting only aggregate, anonymized data that cannot be matched. *See* Ex. A at 1; Compl. ¶ 43

---

[5] *See* James R. Schmidt, Jr., BSME, *GPS Coordinates: How Many Decimal Places Do You Need?*, DJS Associates, https://www.forensicdjs.com/blog/gps-coordinates-many-decimal-places-need; Compl. ¶ 37 n.13.

n.18. In particular, the dashboard, shown below, shows aggregate location information in a separate and unconnected link from aggregate viewership information. *See* Ex. A at 1.



Showing "Locations" and "Videos" in separate and unconnected displays of the dashboard

Providing only aggregate statistics, rather than "linking" individual data

Ex. A at 1.  It takes several speculative inferential leaps to arrive at the conclusion that the display of aggregate data on App usage indicates that the Patriots either knowingly disclosed users' PII or knew that Google would or could combine them to identify users. *See Robinson*, 152 F. Supp. 3d at 183 (admonishing against the idea that "information which is not otherwise PII can somehow become PII because of the potential, however remote, of a third party to 'reverse engineer' a disclosure using data gathered from other sources").

As to Rover's API, the Complaint does not allege that the Patriots knew or could know that Rover linked its "unique device ID [to the] specific titles of any content viewed." *Id*. ¶ 52. Again, Plaintiff offers only "labels and conclusions," *Iqbal*, 556 U.S. at 678, and therefore the Complaint warrants dismissal. Plaintiff points to developer documentation that purportedly outlines "affirmative steps to implement" location tracking. Compl. ¶¶ 52-58 & nn.28-29. The allegation would show, at most, that the Patriots knowingly took steps to collect geolocation data, and not, as Plaintiff must show, that the Patriots knowingly collected data that linked precise geolocation

data to the content of videos viewed in order to identify an individual. Without the extra steps, Plaintiff has failed to allege a knowing collection.

### D. The App's Alleged Use of the Anvato API Is "Incident to the Ordinary Course of Business" and Thus Outside the Reach of the VPPA.

Even assuming a knowing disclosure of PII through the Anvato API, the conduct would fall within the VPPA's "ordinary course of business" exception. 18 U.S.C. § 2710(b)(2)(E). Such disclosures are lawful when they are incident to, *inter alia*, "order fulfillment" or "request processing." *Id.* § 2710(a)(2). Courts in the First Circuit have explained that disclosures that are "in furtherance of business management and operations that are . . . inner facing" or "designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cybersecurity" would fall within the exception. *Rancourt* v. *Meredith Corp.*, No. 22-CV-10696-ADB, 2024 WL 381344, at *17 (D. Mass. Feb. 1, 2024); *see Louth* v. *NFL Enterprises LLC*, No. 21-CV-00405, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) ("end-to-end video processing and management functions" covered by the exception (internal quotation marks and citation omitted)); *accord Rodriguez* v. *Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1054-55 (9th Cir. 2015); *Sterk* v. *Redbox Automated Retail*, LLC, 770 F.3d 618, 625 (7th Cir. 2014).

The VPPA's legislative history confirms that the ordinary course of business exception covers disclosures for the purpose of supporting the "management and operation" of a company's business. *Rancourt*, 2024 WL 381344, at *17. Indeed, both the Ninth and Seventh Circuits have pointed out "Congress' awareness of the unremarkable fact that no business is an island and that video tape services providers, like many other businesses, 'may use third parties in their business operations.'" *Rodriguez*, 801 F.3d at 1054 (citing *Sterk*, 770 F.3d at 624 and quoting S. Rep. No. 100–599 at 14 (1988)). And, crucially, "[t]he functions performed by these third parties fall within the definition of 'order fulfillment' or 'request processing.'" *Id.* (citing *Sterk*, 770 F.3d at 624 and

quoting S. Rep. No. 100–599 at 14). Accordingly, when a mobile app engages third parties to assist in operating the features of that app, disclosures incident to that essential business relationship are permitted by the VPPA.

As alleged, the data disclosed by the App to the Anvato API falls squarely within the exception because Anvato "manage[s] and operat[es]" the App's *video services*. *Rancourt*, 2024 WL 381344, at *17; *see* Compl. ¶¶ 28-29 (acknowledging Anvato provides "video services" for the App). The only example the Complaint provides of how Anvato works in the context of the App shows that Anvato acts as the App's video player. *See id.* ¶ 30 ("[A] user may open the video on the App below titled 'Bill Belichick 1/2: "It's a one game season for us."'"). Such "request processing," 18 U.S.C. § 2710(a)(2), lies at the core of the ordinary course of business exception.

The Complaint's attempt to conflate the App's ordinary business use of Anvato as a "video processing and management platform," Compl. ¶ 29, with other functions outside the exception fails. Seeking to minimize the only concrete example the Complaint provides as to how the App actually employs Anvato (for video hosting services), the Complaint offers a multitude of vague, abstract allegations of what Anvato generally "offers" (¶¶ 28, 29) or "*can* receive" (¶ 37 (emphasis added)), how "[c]ompanies *can* use" data (¶ 40 (emphasis added)), or what Google "is able" to or "can" do (¶¶ 46, 48). Mere speculative gestures towards Anvato's capabilities[6]—not specifically alleged to be used by the Patriots App—represent precisely the kind of allegations that are "so

---

[6] The Complaint's selective quotation of a blog post underscores its reliance on vague assertions of what is *offered*, not what the App actually uses. *See* Compl. ¶ 29 (alleging "*[t]he Anvato platform* offers" a laundry list of functions and services, citing a Google blog post). That post actually indicates that "*GCP*" (the Google Cloud Platform), of which Anvato is just a part, is the service that offers the functions noted in the Complaint. *Anvato, Google's complete OTT video platform, now on Google Cloud Platform*, Google (Feb. 8, 2017), https://cloud.google.com/blog/topics/inside-google-cloud/anvato-googles-complete-ott-video-platform-now-google-cloud-platform. The Complaint does not mention the GCP, let alone allege that the App uses it.

threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Air Sunshine, Inc.* v. *Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (internal quotation marks and citation omitted). So too the numerous references to articles explaining technology, processes, and services that Plaintiff fails to allege are at issue here. *See, e.g., id.* ¶ 34 (professor's opining on "longitudinal geolocation information" not alleged to be collected through Anvato); *id.* ¶ 35 (*New York Times* article about companies' general use of geolocation); *id.* ¶ 41 (professor's musings on Google's overall business model). Measuring the Complaint by its actual allegations of how the Patriots App uses Anvato—as the App's video player—it is clear that the App uses Anvato "in furtherance of business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of the business." *Rancourt*, 2024 WL 381344, at *17.

Properly stripped to what it concretely alleges about the App's actual use of Anvato, the Complaint alleges only disclosures of PII "incident to the ordinary course of business" of the App, 18 U.S.C. § 2710(b)(2)(E), which fall within the statutory safe harbors of "request processing "and "order fulfillment," *id.* § 2710(a)(2). Naturally, the App might "send[] the link with the video the user opened to Google through Anvato," Compl. ¶ 31, because such information would be necessary to process and fulfill the user's digital video order. Similarly, any alleged disclosure of geolocation—though, notably, the Complaint fails to allege that the Anvato API collects *precise* geolocation[7]—could be used to ensure that the device conforms with the App's required geographic restrictions.[8]  In line with what other courts have held lawful and congressional intent,

---

[7] *See* Compl. ¶ 37 ("*On information and belief*, the Anvato API *can receive* a user's precise geolocation with more than three decimal places of accuracy (i.e., within less than forty feet of the user). In other words, this type of geolocation *can be considered* precise…." (emphases added)).

[8] For example, the Patriots App page on the Apple App and Google Play Stores notes that "geographic and device restrictions apply" to available "Live Radio Game Broadcasts." Ex. C at 1, 7 (alteration in capitalization). Because the App's terms and the process of downloading it

the alleged disclosure of PII relates directly to the core of the App's functionality and reflects "the unremarkable fact" that mobile apps "like many other businesses, may use third parties in their business operations." *Rodriguez*, 801 F.3d at 1054 (internal quotation marks and citation omitted).

Accordingly, even assuming the Complaint alleges a knowing disclosure of PII through the Anvato API, this claim must be dismissed because the alleged disclosures are "incident to the ordinary course of business," 18 U.S.C. § 2710(b)(2)(E), and thus permitted by the VPPA.

### E.    The Patriots' Use of Rover's API Is in Accordance with the VPPA's "Marketing" Exception

Alleged disclosures through Rover's API also fall under the VPPA's exception for "marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D)(ii). The VPPA exempts from liability PII disclosures if (i) the "video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure," and (ii) "the disclosure does not identify the title, description, or subject matter of any video tapes," and "however, the subject matter of such materials may be disclosed if . . . the disclosure is for the exclusive use of *marketing goods and services directly to the consumer*." *Id.* (emphasis added).

The App satisfies both these elements. It provides an opportunity to prohibit disclosures of PII through its privacy policy (the "Policy"). The Policy instructs both Android and iOS users on "how to opt-out of or withdraw consent to geolocation data collection" and "third-party collection of data." *See* Ex. D at 9-10.[9] The Complaint is conspicuously silent about the Policy's clear opportunity to prohibit disclosure in conformance with subsection (b)(2)(D).

---

from the app stores, *see* Compl. ¶ 15, are "sufficiently referred to in the complaint" and "central to [P]laintiff['s] claim," these sources are properly considered here. *Freeman* v. *Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013).

[9] The Complaint sufficiently refers to the Policy, *see* Compl. ¶¶ 18-20, which is also "central to [P]laintiff['s] claim" and thus properly considered on a motion to dismiss. *Freeman*, 714 F.3d at 36.

And the Complaint makes clear that any alleged disclosure of PII to Rover's API is "for the exclusive use of marketing goods and services directly to the consumer." § 2710(b)(2)(D)(ii). The few allegations that describe how the App interacts with Rover's API show that Rover is only used for marketing *by the Patriots* to its users. *See* Compl. ¶ 50 ("Rover develops tools for sports teams to help them understand and market to their fanbases."); ¶ 51 ("The Rover API *gives Defendant* the ability to ingest usage data from users who download the App in order to target them with advertising based on that data." (emphasis added)). To the extent Rover allows the Patriots "to target specific content to the appropriate fans" or create "personalized experiences," *id.* ¶ 51, these functions lie within the purview of direct marketing to App consumers. Because the Complaint lacks an allegation that the Patriots use Rover to market *third-party* services, Plaintiff's claims with respect to Rover's API are covered by the VPPA's marketing exception.

### F.     Plaintiff's Claims Must Be Dismissed Because the Statute of Limitations Has Expired

Finally, Plaintiff's Complaint must be dismissed because the two-year statute of limitations had long since expired before it was filed on February 1, 2024. 18 U.S.C. § 2710(c)(3). The only allegation in the Complaint that indicates Plaintiff's conduct claims that "[i]n *approximately 2019*, Plaintiff Serra downloaded the App on his mobile phone, did not create an account, and watched multiple videos thereafter." Compl. ¶ 7 (emphasis added); *see also id.* ¶ 83 ("Plaintiff and Class Members watched videos Defendants provided via the App."). Liberally construing the Complaint to suggest Plaintiff viewed videos even into 2020, that would still fall two years short of the relevant window between February 1, 2022 and February 1, 2024. Accordingly, Plaintiff's claims are time-barred.

### <u>CONCLUSION</u>

For these reasons, the Patriots ask the Court to dismiss the Complaint in its entirety.

Dated:  April 30, 2024                    Respectfully submitted,

                                          /s/ *John P. Carlin*
                                          John P. Carlin (admitted *pro hac vice*)
                                          Peter Carey (admitted *pro hac vice*)
                                          Paul, Weiss, Rifkind, Wharton & Garrison LLP
                                          2001 K Street NW
                                          Washington, D.C. 20006
                                          (202) 223-7372
                                          jcarlin@paulweiss.com
                                          pcarey@paulweiss.com

                                          Carter Greenbaum (admitted *pro hac vice*)
                                          Paul, Weiss, Rifkind, Wharton & Garrison LLP
                                          1285 Avenue of the Americas
                                          New York, NY 10019-6064
                                          (212) 373-3955
                                          cgreenbaum@paulweiss.com

                                          /s/ *Samuel N. Rudman*
                                          Samuel N. Rudman (BBO#: 698018)
                                          Adam Bookbinder (BBO#: 566590)
                                          Choate, Hall & Stewart LLP
                                          Two International Place
                                          Boston, MA 02110
                                          (617) 248-4034
                                          srudman@choate.com
                                          abookbinder@choate.com

                                          *Counsel for New England Patriots LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on April 30, 2024.

<u>/s/ *Samuel N. Rudman*            </u>
Samuel N. Rudman (BBO #: 698018)

22