**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Anthony Serra,

on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

New England Patriots LLC,

*Defendant*.

Civil Action No. 4:24-cv-40022-MRG

**Leave to file granted on November 19, 2024**

# NEW ENGLAND PATRIOTS LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# ARGUMENT

Plaintiff's opposition (the "Opposition" or "Opp'n") confirms what this case is really about: extending the First Circuit's decision in *Yershov* v. *Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) beyond the carefully circumscribed limits that the First Circuit articulated. Neither *Yershov,* nor the statute at issue, the Video Privacy Protection Act ("VPPA") can bear the weight of Plaintiff's attempt to extend the definition of a "subscriber" under the VPPA or the definition of personally identifiable information ("PII") beyond the narrow bounds that the First Circuit articulated. And Plaintiff offers no justification for such an extension to the harmless disclosure of concededly generic data that a device in Massachusetts accessed free videos of a Patriots news conference. The Opposition, which fails to meaningfully address the various fatal defects requiring dismissal, demonstrates why the court should not use this case to make new law.

First, the facts in this case are materially different from those at issue in the First Circuit decision in *Yershov*. There, the plaintiff qualified as a "subscriber" under the VPPA because he was obligated to "exchange" his personal information in return for access to Gannett's videos. Here, as the Complaint makes clear, Plaintiff is under no such obligation. And district courts faced with similar cases have repeatedly held that a user is not a "subscriber" if access to videos is not conditioned on the exchange of personal information.

Second, the Opposition fails to respond to Defendant's argument that the "unique string" allegedly collected by one of the third parties at issue in this case does not qualify as PII because it is unique to the third party. By contrast, the First Circuit held that an identifier only qualifies as PII if it can be used to identify an individual across "multiple electronic devices, ***applications, and services***." *Yershov*, 820 F.3d at 484 (emphasis added). An identifier that is unique to one application or one service cannot be used across ***multiple*** applications and services. Plaintiff also

fails to allege that the other third party—Anvato—is able to "link" video viewership data with an individual, a requirement under *Yershov*.

Third, the Opposition does not cite a single well-pleaded allegation that Defendant "knowingly" disclosed PII to third parties. The two cases upon which Plaintiff's entire Opposition relies include well-pleaded allegations that the defendants *actually* disclosed PII in order to target advertisements. No such allegations are included here.

*Fourth*, the Opposition provides no justification why the express exemptions in the VPPA do not apply to Defendant's alleged disclosure of PII.

*Finally*, the Opposition barely hazards an argument that Plaintiff's claim is timely.

For any of these reasons, and all of these reasons, Plaintiff's Complaint must be dismissed.

**A. Plaintiff's Opposition Rests on a Misreading of First Circuit Precedent**

Plaintiff's attempt to extend the reasoning of *Yershov* to this case, where Mr. Serra is under no obligation to provide his alleged PII, fails. In *Yershov,* the First Circuit held that the plaintiff was a "subscriber" under the VPPA because he was obligated—as a condition of accessing Gannett's video content—to provide his geolocation data. *See id.* at 489 (stating Yershov "did indeed have to provide Gannett with personal information" in order to access Gannett's mobile application). Not so here. The Complaint alleges that the App only collected geolocation information "when a user had location services enabled." Compl. ¶ 52. The Complaint does not allege that users, including Mr. Serra, are obligated to enable location services or provide their alleged PII to access videos on the Patriots App. Therefore, Patriots App users are not obligated to provide geolocation data as "consideration" for accessing the Patriots' App. *See id.*

The First Circuit decision makes clear that this distinction was central to the outcome of the case, and not merely "dicta" as Plaintiff argues. In *Yershov,* the First Circuit explicitly

distinguished the Eleventh Circuit decision in *Ellis* v. *Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) (and its holding that Ellis was not a subscriber under the VPPA) on the basis that the mobile application in that case ***did not require*** the collection of geolocation data. Describing the facts in *Ellis*, the First Circuit observed that "the user of the application in [*Ellis*] did not ***have to*** 'provide any information to Cartoon Network.'" *Yershov*, 820 F.3d at 488 (quoting *Ellis,* 803 F.3d at 1254) (emphasis added). The First Circuit then wrote that it "would describe the allegations (and their reasonable inferences) in this case quite differently. To use the App, Yershov did indeed ***have to*** provide Gannett with personal information. . . ." *Id.* at 489 (emphasis added). Plaintiff's attempt to dismiss the distinction as "dicta" is unsupported by the reasoning of *Yershov*.

Plaintiff's proposed extension of *Yershov* has also been repeatedly rejected by other courts.[1] In addition to the Eleventh Circuit decision in *Ellis,* numerous district courts have likewise held that a user is not a subscriber unless access to video content is *conditioned* on the provision of PII. *See, e.g.*, *Salazar* v. *Nat'l Basketball Ass'n,* 685 F. Supp. 3d 232, 245 (S.D.N.Y. 2023*);* *Edwards* v. *Learfield Commc'ns*, *LLC*, No. 1:23-CV-65, 2023 WL 8544765 (N.D. Fla. Oct. 6, 2023); *Carter* v. *Scripps Networks, LLC,* 670 F. Supp. 3d 90, 93, 99-100 (S.D.N.Y. 2023). *Salazar* is instructive. There, the district court held that a user who signed up for an email listserv was not a "subscriber" under the VPPA because access to video content was not conditioned on providing the user's email address. *Id.* The same reasoning applies here, where access is not conditioned on the provision of alleged PII.

---

[1] The Patriots' practice is consistent with industry practice on VPPA compliance. A recent VPPA compliance toolkit states that "[c]ourts interpreting the meaning of 'subscriber' have held that a subscription does not have to be paid, but it does require a relationship or commitment tied to accessing the video content." Greenbaum Suppl. Decl. Ex. E at 11. It recommends: "to avoid 'subscribers, you can offer users the option to create an account, but you should allow those who do not create an account to access the same content as those with accounts." Greenbaum Supp. Decl. Ex. E at 14.

The Opposition's analogy to "the brick-and-mortar world" supports Defendant, not the Plaintiff. In *Yershov*, the First Circuit considered a "non-electronic version of the electronic relationship between Yershov and Gannett." 820 F.3d at 489. In that hypothetical, the First Circuit posited that "Gannett had installed a hotline at Yershov's home, for free, allowing him to call Gannett and receive instant delivery of videos in exchange for his name and address. . . ." *Id.* But, even in that scenario, the "exchange" described by the First Circuit was the hypothetical individual's personal information (his name and address) "***in exchange***" for instant delivery of videos. *Id.* (emphasis added). Here, there is no exchange. Patriots' App users are not required to exchange their personal information (*i.e.* geolocation data) to view videos in the App.

The Opposition argues that the "*Yershov* court considered and rejected" a definition of a subscriber under the VPPA that required "some form of consideration." Opp'n at 7. That, too, is incorrect. To the contrary, the First Circuit used the term "consideration." It explained "[w]hile [Yershov] paid no money, access was not free of a commitment to provide ***consideration*** in the form of [his Android ID and GPS location], which was of value to Gannett." *Yershov*, 820 F.3d at 489 (emphasis added). Interpreting *Yershov*, numerous courts have observed that the First Circuit decision requires consideration. *See, e.g. Peterson* v. *Learfield Comm'n, LLC,* No. 8:23-CV-146, 2023 WL 9106244, at *15 (D. Neb. Dec. 8, 2023) ("Both [*Yershov* and *Ellis*] require some exchange of 'consideration between the alleged 'subscriber' and the VTSP, but neither requires the 'subscriber' to provide monetary consideration.") (citation omitted); *Brown* v. *Learfield Commc'ns, LLC*, No. 1:23-CV-00374, 2024 WL 1477636, at *5 (W.D. Tex. Jan. 29, 2024) ("[T]he First Circuit appears to require only consideration from the alleged subscriber in the form of providing personal information."); *Gardener* v. *MeTV,* 681 F. Supp. 3d 864, 870 (N.D. Ill. 2023) (collecting cases requiring "exchange" or "consideration" in the form of personal

information to qualify as a subscriber). While Plaintiff's opposition focuses on the distinction between paid and free subscriptions, the issue here is not whether Plaintiff *paid* money to access the Patriots' App, but whether he was obligated to provide anything of value at all, which the First Circuit defined to include "personal information." *Yershov,* 820 F.3d at 489. He was not.

Context is also critical. The First Circuit described the issue of whether Yershov qualified as a subscriber as a "close[] question." *Id.* at 487. And the First Circuit warned that, despite its "broad" language, its "actual holding, in the end, need not be quite as broad as our reasoning suggests." *Id.* at 489.

Because no Patriots App user can allege that they are a "subscriber" under *Yershov*, Plaintiff's complaint must be dismissed with prejudice.

Plaintiff's Complaint must also be dismissed because Mr. Serra does not allege that Defendant's App collected geolocation data *from him*. In particular, as Defendants argued in their motion to dismiss ("Motion"), the Complaint does not allege that Mr. Serra enabled location services on his phone, a precondition to the App's alleged collection of location data. Plaintiff's Opposition hazards no response, resulting in waiver. *Vallejo* v. *Santini-Padilla*, 607 F.3d 1, 7 n.4 (1st Cir. 2010). The Complaint thus fails to allege that Mr. Serra is a subscriber under the VPPA.

### B. The Opposition Fails to Engage with Defendants Argument that Neither Rover nor Anvato Collect PII

The Opposition fails to contest any of Defendant's arguments that Rover does not collect PII. The Patriots' opening brief argued that Rover's alleged collection of a "unique string" does not constitute PII under the VPPA because the alleged identifier is unique *to Rover*. *See* Mot. at 9 (citing cases). Plaintiff's Opposition does not respond to that argument. Instead, the Opposition asserts that the bare allegation that Rover collects a "unique device ID" suffices. Opp'n at 13. But *Yershov* requires an allegation that the unique identifier can be used "to identify and track specific

users across multiple electronic devices, ***applications, and services***." *Yershov*, 820 F.3d at 484 (emphasis added). It goes without saying that an identifier that can only be used by *Rover*, cannot be used across other "applications, and services" as required under *Yershov*. Neither does the Opposition address the Patriots' argument that the Complaint fails to allege the "linkage" that connects an individual as having requested or obtained specific video content. *Yershov*, 820 F.3d at 486. Thus the claims as to Rover's alleged collection of PII must be dismissed.

Plaintiff's arguments as to Anvato fare no better. As the Patriots argued, Plaintiff must allege, as in *Yershov*, that PII is "reasonably and foreseeably likely to reveal which . . . videos [the user] has obtained." *Id*. As *Yershov* made clear, that test requires Plaintiff to allege that Defendant disclosed data that can "link" "specific video materials or services" to the person requesting those services. *Id.* at 485-86. While Plaintiff analogizes this case to *Yershov*, in which Gannett allegedly disclosed PII to Adobe, the allegations as to Adobe's capabilities are a far cry from Anvato's. The decision in *Yershov* revolved around Adobe's ability—through its "game program"—to connect individuals to the specific video content that they requested. *Id.* at 486. By contrast, while Plaintiff alleges Anvato's purported parent company, Google, has the ability to utilize information collected from Anvato to programmatically target advertisements and create in-video commercials, critically, Plaintiff does not allege that the Patriots utilize Google to programmatically target advertisements (they do not) or utilize in-video commercials (they do not). Those differences are fatal to Plaintiff's attempt to analogize this case to either *Yershov* or *Louth*.

**C. Plaintiff Fails to Allege That the Patriots Knowingly Disclosed PII to Third Parties**

The Opposition argues that the Complaint adequately alleges that the Patriots knowingly disclosed PII to third parties, as required under the VPPA, because Anvato's parent company, Google, can use that data to target advertisements. Opp'n at 14. But the Complaint does not plead

that Defendant *uses* those services from Anvato's parent company, Google. While the Complaint alleges that "Anvato uses the data it receives from Defendant to fill commercial breaks in videos," the Complaint does not allege that the App includes any in-video commercials (they do not).

Neither does the Complaint adequately allege that the Patriots knew or could know that Rover linked its "unique device ID [to the] specific titles of any content viewed." Compl. ¶ 52. In fact, the section of the Complaint devoted to how "Defendant shares its users' PII with Google and Rover to increase advertising revenue and metrics analyzing" does not include a single allegation about Rover. *See* Compl. ¶¶ 59-64. Without those critical allegations, the Complaint fails to allege any knowing disclosure of PII.

The Opposition's citation to two cases in which the plaintiffs adequately alleged that defendants utilized third parties to target advertisements make clear precisely why Plaintiff's complaint fails to do so here. In both *Saunders* and *Louth*, the district courts held that the complaint adequately alleged a knowing disclosure of PII because the respective defendants allegedly used the relevant third party to "provide advertisements tailored to specific users." *Saunders* v. *Hearst Television, Inc*., No. 23-CV-10998, 2024 WL 126186, at *4 (D. Mass. Jan. 11, 2024); *see Louth* v. *NFL Enterprises LLC*, No. 1:21-CV-00405, 2022 WL 4130866, at *3 (D.R.I. Sept. 12, 2022). The court in *Saunders* cited specific paragraphs in that complaint that quoted from a public case study in which Google represented that Hearst Television utilized "DoubleClick for Publishers to . . . create and target audience segments" and "improve its advertising offering in new and efficient ways." First Am. Compl. ¶ 101-105, ECF No. 22, *Saunders* v. *Hearst Television, Inc,* No. 1:23-cv-10998 ("Saunders Compl.") (attached as Exhibit F). And in *Louth,* the complaint alleged that "the Anvato platform will fill commercial breaks in videos ***on the NFL App*** [by] auction[ing] this PII to prospective advertisers." Am. Compl. ¶ 60, ECF No. 14, *Louth* v. *NFL Enterprises LLC*,

No. 1:21-CV-00405 (D. R.I 2022) (attached as Exhibit G). By contrast, no such allegations exist here. Plaintiff's complaint does not allege that the Patriots utilized any ad targeting services from Anvato, as in *Saunders*. Nor does it allege that the Patriots utilized in-video commercials (they do not), as in *Louth.* Instead, the Complaint includes allegations about Anvato's hypothetical ability to target advertisements, without a single allegation that Defendants use those services.

**D. The Ordinary Course of Business Exception Applies Because Plaintiff's Fail to Allege that Defendant Utilizes Google's Services to Target Advertisements**

While Plaintiff alleges that the "ordinary course of business" exception does not apply because Defendants allegedly use Anvato for "marketing, advertising, and analytics," Opp'n at 16, the allegations in the Complaint fail to allege that Defendants actually use Avanto for anything other than video delivery. Plaintiff's Opposition makes clear that Defendant uses Anvato for "end-to-end video processing," and suggests the Defendant *can* use Anvato's parent, Google, for "dynamic ad insertion and video analytics." Opp'n at 4. In *Rancourt v. Meredith Corp.*, No. 22-CV-10696, 2024 WL 381344 (D. Mass. Feb. 1, 2024), the district court held that "if the disclosure of PII is in furtherance of business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of the business… it falls under the exception." *Id.* at *17. Judge Burroughs found that the defendant's "model of deriving revenue from targeted advertising goes beyond the management and operations of the business," and thus stepped outside the safe harbor provided by the exception. *Id.* Here, however, properly stripped to what it concretely alleges about the App's actual use of Anvato, the Complaint alleges only that the Patriots utilized Anvato's video delivery service.[2] Plaintiff's Opposition cites no well-plead allegation to the contrary.

[2] To the extent that Plaintiff relies on Anvato's provision of analytics, such services also fall under the ordinary course of business exception as well because analytics is "intra-corporate or inner facing, designed to ensure the smooth operation of the business." *Rancourt*, 2024 WL 381344 at *17.

Plaintiff incorrectly asserts that the district court in *Louth* rejected the very argument the Patriots make here. In fact, *Louth* acknowledged that "end-to-end video processing and management" would be covered by the ordinary course of business exception. *Louth*, 2022 WL 4130866 at *4. However, when taken with the extensive allegations about transmission of PII for the express purpose of advertising auctions, the court held that it was plausible the NFL App was using Anvato to "increase advertising revenue," a purpose outside the exception. *Id.* As explained above, the Complaint fails to make similar allegations about the Patriots' use of Anvato for targeted ad auctions. Thus, the "ordinary course of business" exception applies to Defendant's use of Anvato, necessitating dismissal of claims based on Defendant's use of that service.

The Opposition argues that the marketing exception does not apply to Defendant's alleged use of Rover because (1) Defendant did not provide Plaintiff with the opportunity "in a clear and conspicuous manner to prohibit such disclosure" and (2) the Patriots' alleged disclosure identified the "title or description" of the videos. Both arguments fail. As to the first, the Patriots' Privacy Policy allows users to opt out of any disclosure of their alleged PII. *See* Greenbaum Decl. Ex. D at 11. The Privacy Policy provides (in bold letters) a section titled "Precise Geolocation Data for IBA [Internet-Based Advertising]," which explains "how to opt-out of or withdraw consent to geolocation data collection" for both Android and iOS users. *See* Greenbaum Decl. Ex. D at 10.[3] This opt-out procedure meets the "clear and conspicuous" standard because it is "difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers." 16 C.F.R. § 255.0 (FTC's regulation defining "clear and conspicuous"); *see also Santos-Rodriguez v. Doral Mortg.*

[3] Plaintiff argues that the Court should not consider the Privacy Policy "since it falls outside of the four corners of the complaint, and it does not fall within an exception under Watterson." Opp'n at 10 n.4. However the Complaint refers to the Privacy Policy in no fewer than three paragraphs, see Am. Compl. ¶¶ 18-20, in an attempt to sidestep a consent defense. *Garcia* v. *Enter. Holdings, Inc*., 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (holding that the court may consider a privacy policy on a motion to dismiss where Plaintiff alleges lack of consent). The Privacy Policy is therefore both "central to the [p]laintiff's claim" and "sufficiently referred to in the complaint" and thus properly considered on a motion to dismiss. *Watterson* v. *Page*, 987 F.2d 1, 3 (1st Cir. 1993).

*Corp.,* 485 F.3d 12, 16 (1st Cir. 2007) (noting in the context of the Truth In Lending Act that the "clear and conspicuous standard is less demanding than a requirement of perfect notice").[4] As to the second, as the Opposition concedes, Anvato allegedly collected the "link with the video the user opened" and not the "title of the video viewed." Opp'n at 10.

The Opposition also argues that the marketing exception only allows the Patriots to disclose the "names and address of consumers," while the Patriots allegedly disclosed "far more." Opp'n at 18. The argument does not pass muster. The "far more" is allegedly "precise geolocation" which, according to Plaintiff, is accurate within 40 feet, while the marketing exception permits disclosure of *exact* address. If anything, precise geolocation data is *less* identifying than a user's actual address. Thus, the marketing exception applies to the Patriots' alleged disclosure.

### E. The Opposition Has No Answer for the Statute of Limitations

Finally, Plaintiff's attempt to stretch the allegations of the Complaint into the eligible statutory period would push the language used past its breaking point. Plaintiff argues that his claim that he downloaded the app "[i]n approximately 2019" and then "watched multiple videos thereafter" somehow brings the relevant conduct past February 1, 2022. Such allegations are not nearly specific enough to withstand Rule 12(b)(6)'s pleading standard. Allowing these amorphous allegations to satisfy the statute of limitations would render it nearly meaningless.

## CONCLUSION

For these reasons, the Patriots ask the Court to dismiss the Complaint in its entirety.

---

[4] Plaintiff's Opposition also argues that Plaintiff "disputes the authenticity of the document since it contains insufficient information to determine whether it was in effect during the relevant period." Opp'n at 17 n. 4. Even taking the criticism at face value, the version of the privacy policy in effect since the beginning of the statutory limitations period, which is still publicly available online, also includes a bold section called "Location Based Services" which states: "you may opt-out of location-based services at any time by editing the setting at the device level or by emailing us at privacy@patriots.com." Greenbaum Decl. Ex. H at 12. It also includes additional means to opt out of other data sharing. *See id.* at 11-13. The 2022 version of the privacy policy, which states it has been in effect since 2020) is also materially identical with respect to disclosing a user's ability to opt out as the version in effect in 2019. *See* Greenbaum Decl. Ex. I at 12.

Dated: November 19, 2024

Respectfully submitted,

/s/ *John P. Carlin*
John P. Carlin (admitted *pro hac vice*)
Peter Carey (admitted *pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street NW
Washington, D.C. 20006
(202) 223-7372
jcarlin@paulweiss.com
pcarey@paulweiss.com

Carter Greenbaum (admitted *pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3955
cgreenbaum@paulweiss.com

/s/ *Samuel N. Rudman*
Samuel N. Rudman (BBO#: 698018)
Adam Bookbinder (BBO#: 566590)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
(617) 248-4034
srudman@choate.com
abookbinder@choate.com

*Counsel for New England Patriots LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 19, 2024.

/s/ *Samuel N. Rudman*
Samuel N. Rudman (BBO #: 698018)