IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY SERRA, individually and on behalf of all others similarly situated, | Case No. 4:24-cv-40022-MRG |
| Plaintiff, | Hon. Margaret R. Guzman |
| *v.* | |
| NEW ENGLAND PATRIOTS LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

# Table of Contents

I.      Introduction ......................................................................................................1

II.     Factual and Procedural Background .................................................................2

    A.  Summary of Allegations ............................................................................2

    B.  Procedural History .....................................................................................3

    C.  Negotiations ...............................................................................................4

    D.  Key Settlement Terms ................................................................................4

        1.  Class Definition ....................................................................................4

        2.  Settlement Fund ....................................................................................5

        3.  Injunctive Relief ...................................................................................6

        4.  Release ..................................................................................................6

III.    The Settlement Should be Preliminary Approved .............................................6

    A.  The Court will be able to certify the proposed Class. ................................7

        1.  The Class satisfies the requirements of Rule 23(a). ...........................8

            a.  Class Members are too numerous to be joined. ..............................8

            b.  There are common questions of law and fact. ................................8

            c.  Plaintiff's claims are typical of the Class. .....................................9

            d.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the class .............................................................................................10

        2.  The Class satisfies the requirements of Rule 23(b)(2). .....................11

        3.  The Class satisfies the requirements of Rule 23(b)(3). .....................12

            a.  Common issues of law and fact predominate for settlement purposes. ...........12

            b.  A class action is a superior means of resolving this controversy. ...................13

    B.  The settlement is fair, reasonable, and adequate. ....................................14

        1.  The settlement is the product of good-faith, arm's-length negotiations among experienced counsel. ......................................................................14

        2.  The settlement treats all Class Members equitably ............................14

        3.  The relief under the proposed settlement is adequate. .......................15

        4.  Plaintiff's counsel are highly experienced in similar litigation and their opinion regarding the Settlement is entitled to considerable weight. .......................18

    C.  The proposed Notice Plan should be approved. .......................................19

IV.     Proposed Schedule for Notice and Final Approval ........................................20

V.  Conclusion ................................................................................................................................20

# Table of Authorities

## Cases

*Ambrose v. Boston Globe Media Partner*s, LLC,
No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023) ............................................. 15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................. 8, 12

*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) .................................................................... 10

*Bertella v. JetDirect Aviation, Inc.*,
No. 09-cv-10527, 2010 WL 4103664 (D. Mass. Oct. 19, 2010) ..................... 10, 11

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ......................................................... 10, 16

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................. 10

*Cohen v. Brown Univ.*,
16 F.4th 935 (1st Cir. 2021) ........................................................................ 7

*Del Sesto v. Prospect Chartercare, LLC*,
No. 18-cv-00328, 2019 WL 2162083 (D.R.I. May 17, 2019) ............................. 7

*DeRosa v. Mass. Bay Commuter Rail Co.*,
694 F. Supp. 2d 87 (D. Mass. 2010) ............................................................ 8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ............................................................................... 19

*Fiorentino v. FloSports, Inc.*,
No. 1:22-CV-11502-AK (D. Mass Aug. 23, 2023) .......................................... 15

*Gintis v. Bouchard Transp. Co.*,
596 F.3d 64 (1st Cir. 2010) ...................................................................... 13

*In re Credit Suisse-AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008) ................................................................... 9

*In re Lupron Mktg. & Sales Prac. Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ................................................................... 8

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) ................................................................. 8, 13

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
    58 F. Supp. 3d 167 (D. Mass. 2014) ............................................................. 17

*In re Organogenesis Sec. Litig.*,
    241 F.R.D. 397 (D. Mass. 2007) .................................................................. 11

*Kinder v. Meredith Corp.*,
    No. 14-cv-11284, 2016 WL 454441 (E.D. Mich. Feb. 5, 2016) ...................... 9

*Mazola v. May Dep't Stores Co.*,
    No. 97-cv-10872, 1999 WL 1261312 (D. Mass. Jan. 27, 1999) .................... 18

*Meaden v. HarborOne Bank*,
    No. 23-cv-10467, 2023 WL 3529762 (D. Mass. May 18, 2023) ............... passim

*Ouadani v. Dynamex Operations E., LLC*,
    405 F. Supp. 3d 149 (D. Mass. 2019) ......................................................... 10

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ...................................................................... 18

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) ........................................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................... 12

**Other Authorities**

7AA Wright & Miller, FED. PRAC. & PROC. CIV. § 1778 (3d ed. 2023) ..................... 12

*Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* 11 (Sept.
    2019) .......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 8

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 9

Fed. R. Civ. P. 23(b)(2) .......................................................................................... 12

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 12

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 19

Fed. R. Civ. P. 23(e)..............................................................................................................7

Fed. R. Civ. P. 23(e)(1)(B)...................................................................................................19

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...........................................................................................17

Fed. R. Civ. P. 23(e)(2)(i)–(iv) ...........................................................................................16

Fed. R. Civ. P. 23(e)(2), (4), (5) ...........................................................................................7

# I.  INTRODUCTION

Plaintiff Anthony Serra ("Plaintiff"), on behalf of himself and others similarly situated, respectfully asks the Court to approve a proposed Class Action Settlement Agreement (the "Settlement") with Defendant New England Patriots LLC ("the Patriots" or "Defendant").[1] The Settlement will fully resolve this litigation, wherein Plaintiff alleges the Patriots violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by allegedly installing and running Rover's SDK and Google's Anvato API on its mobile phone application, the New England Patriots App (the "Patriots App"), thereby allegedly disclosing consumers' personally identifiable information, which the VPPA defines as including information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Under the proposed Settlement, the Patriots will create a $2.16 million non-reversionary cash fund for the benefit of the Settlement Class. The Patriots also will agree to certain injunctive relief relevant to VPPA compliance—*i.e.*, to suspend operation of Rover's SDK and Google's Anvato API on the Patriots App to the extent they transmit Precise Geolocation data in connection with a user's viewing of pre-recorded video materials.[2]

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of Court-awarded fees, expenses, service award, and administrative costs, Settlement Class Members who submit valid claims through a very simple claims process will each receive a *pro rata* share of the Net Settlement Fund. Plaintiff and his counsel have vigorously prosecuted this action on behalf of the Settlement Class and—through extensive, arm's-length negotiations—have developed an

---

[1] The Settlement is filed concurrently herewith as Exhibit 1 ("Ex. 1") to the Declaration of Nathaniel L. Orenstein in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Orenstein Decl."). Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

[2] An "API," or application programming interface, is a "mechanism[ ] that enable[s] two software components to communicate with each other using a set of definitions and protocols." AWS, What is an API?, available at https://aws.amazon.com/what-is/api/ (last accessed May 5, 2025). An "SDK," or software development kit, is "a set of platform-specific building tools for developers." AWS, What is an SKD?, available at https://aws.amazon.com/what-is/sdk/ (last accessed May 5, 2025).

understanding of the strengths and weaknesses of the action. Notwithstanding confidence in the merits of his VPPA claim, Plaintiff recognizes the challenges and risks inherent in proceeding through litigation and proving his claims at trial. The challenges and risks include certification of any class, the Patriots' various defenses to liability, including those arising under the statutory text, as well as defenses to any recovery of damages, and other affirmative defenses.

For the reasons set forth herein, Plaintiff respectfully requests that the Court: (1) find it will likely that it will be able to approve the Settlement and certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appoint Plaintiff as Class Representative for the Settlement Class; (3) appoint Berman Tabacco, Gustafson Gluek, PLLC, Wexler Boley & Elgersma LLP, and Taus, Cebulash & Landau, LLP as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) authorize retention of Epiq Class Action and Claims Solutions, Inc. as Settlement Administrator; and (6) set a schedule for final approval of the Settlement and Plaintiff's request for attorneys' fees and expenses.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Summary of Allegations[3]

Plaintiff alleges that Defendant, an NFL team who operates the Patriots App that includes video streaming, intentionally installed and incorporated Rover's SDK and Google's Anvato API (together "APIs") into the Patriots App. D.E. 1 ("Complaint" or "Compl.") ¶¶ 13–59. The Anvato API is a tool that businesses like the Patriots incorporate into their mobile phone applications to deliver videos to consumers, track consumers' actions, and report those actions back to Google for better targeting and delivering advertisements. *Id.* ¶¶ 25–43. The Patriots' use of the Anvato API allegedly allows the Patriots, and by extension Google, to track the Precise Geolocation of consumers and allows Google to

---

[3] The Patriots deny, and continue to deny, many of these allegations.

build detailed profiles about Patriots App users, including which videos they've watched, and facilitates the Patriots' use of Google's advertising services. *Id.* ¶¶ 27–43.

Similarly, the Rover API, developed by Rover Labs Inc. ("Rover"), is a tool that businesses like the Patriots incorporate into their mobile phone applications to track consumers' actions and report those actions back to Rover in order to better target consumers for engagement and monetization. *Id.* ¶¶ 44–48. Plaintiff alleges that the Patriots' use of the Rover API allows the Patriots, and by extension Rover, to track the Precise Geolocation of consumers through the use of Rover's Location module, which was knowingly installed by the Patriots. *Id.* ¶¶ 47–53. The Rover API also is alleged to collect the titles of any videos viewed by consumers in the Patriots App. *Id.*

Plaintiff alleges that the Patriots knowingly configured the APIs to share subscribers' personally identifiable information ("PII"). *Id.* ¶¶ 27–30, 35–38. For instance, when a Patriots App user views a particular video on the app, the Patriots App allegedly sends the title and URL of that video to Google via the Anvato API. *Id.* ¶¶ 28–29. At the same time, the Patriots App allegedly sends the Android Advertising ID (or "AAID") of any users who are using an android device to Google via the Anvato API. *Id.* ¶¶ 36–38. An AAID is a unique identifier that third parties can use to track user activity across multiple mobile phone applications. *Id.*

Plaintiff, Anthony Serra, was a Patriots App user who viewed videos in the Patriots App during the relevant period and who allegedly had his PII and watch history shared with Google and Rover. *Id.* ¶ 7. After Plaintiff downloaded the Patriots App on his phone he watched multiple videos. *Id.* Whenever he did so, the Patriots allegedly sent to Google and Rover, without his consent and via the APIs, the title and URL of the video he accessed as well as his PII, including his Precise Geolocation.

**B.  Procedural History**

Plaintiff filed this case on behalf of himself and all those similarly situated Patriots App users on February 1, 2024, alleging violation of the VPPA. D.E. 1. The Patriots moved to dismiss the complaint

on April 30, 2024. D.E. 45. Plaintiff responded on June 14, 2024, filing a memorandum in opposition to the motion to dismiss, to which the Patriots filed a reply on November 19, 2024. (D.E. 50, 54). On November 25, 2024, Plaintiff filed a notice of supplemental authority in support of his opposition to the motion to dismiss, and the Patriots filed a response thereafter. (D.E. 56, 57).

## C. Negotiations

During the pendency of the motion to dismiss, the Parties discussed the prospect of resolution. As part of these discussions, Defendant provided Plaintiff with information about how the Patriots App operated during the relevant time period, the information that the Patriots received through the Patriots App, the third-party technologies that allegedly received Plaintiff's personally identifying information and the information they received, and the potential class size. *See* Orenstein Decl. at ¶ 3. The parties also had extensive discussions about the specific strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *Id.* These discussions took place over a number of months directly between counsel and were at all times at arms' length. The parties reached an agreement in principle on January 31, 2025. *Id.*

After that, on February 3, 2025, the parties sought a stay of the litigation for the purpose of committing the agreement in principle to formal settlement documentation and presentation to the Court to seek preliminary approval of the settlement. (D.E. 58). The Court granted the Parties' joint request for a stay on February 4, 2025, (D.E. 59) and extended the stay on March 14, 2025 (D.E. 61) and April 15, 2025 (D.E. 63).

On May 8, 2025, the parties finalized and executed the Settlement now before the Court.

## D. Key Settlement Terms

### 1. Class Definition

"Settlement Class" means all individuals residing in the United States who are or have been users of the Patriots App with location services enabled, and who requested or obtained any prerecorded

(including on-demand replay) videos available on the Patriots App, during the Class Period. Excluded from the Settlement Class are (1) any judge presiding over this Action and members of their families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons.

There are an estimated 105,000 Class Members. (Orenstein Decl. ¶ 3).

## 2. Settlement Fund

If the Settlement is finally approved, Defendant will contribute $2,160,000 to a "Settlement Fund" in full satisfaction of all Settlement costs, including all payments to Settlement Class Members, Notice and Administrative Costs, Attorneys' Fees and Expenses, Settlement Class representative Service Awards, and taxes. Settlement Agreement ¶ 2.1. Under the Settlement Agreement, Settlement Class Members will be entitled to seek benefits by submitting a claim form attesting to having watched a video on the Patriots App and having their geolocator enabled on their phone. Assuming there are 105,000 eligible Class Members and that 10% of them will submit claims,[4] *pro rata* payments from the Net Settlement Fund would amount to approximately $120 to each claimant.[5] Settlement Agreement ¶ 2.1. The payments to individual class members will of course be adjusted pro rata depending on the

---

[4] Plaintiff uses a claims rate of 10% for illustrative purposes only. Actual claims rates in class settlements can vary widely depending on factors that are not easily predictable, including media reporting on the settlement, individual class members' reactions to the underlying cause of action, the size of the class, effectiveness of the notice program, the relative ease of submitting a claim, and the nature or amount of potential relief available to claimants. One analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%." FTC, *Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns* 11 (Sept. 2019), *available at* https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

[5] The Net Settlement Fund is the amount remaining for distribution to the Class after deducting settlement-administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court. Settlement Agreement ¶ 1.17. Plaintiff's calculation is based on a Net Settlement Fund of $1.26 million should the court award attorneys' fees, expenses (including claims administration expenses) and service awards requested by Class Counsel.

number of claims filed and the total amount of the Net Settlement Fund. *Id.* At no point will any of the Settlement Fund revert to Defendant.

### 3. Injunctive Relief

In addition to the substantial monetary relief, the Settlement provides for substantive injunctive relief. Settlement Agreement ¶ 2.2. Within 45 days of the Preliminary Approval Order, Defendant has agreed to suspend any known transmission (to the extent any is occurring) by the Patriots App to Anvato through the Anvato API of Precise Geolocation data in connection with a user's viewing of pre-recorded video materials. *Id.* Similarly, within 45 days of the Preliminary Approval Order (or sooner), Defendant will suspend any known transmission (to the extent any is occurring) by the Patriots App to Rover through the Rover SDK of Precise Geolocation data in connection with a user's viewing of pre-recorded video materials. *Id.*

### 4. Release

In exchange for the monetary and injunctive relief, Settlement Class Members will release their claims against Released Parties as defined in the Settlement Agreement.[6] *See* Settlement Agreement ¶¶ 3.1–3.2.  The Settlement also allows the Patriots, at its discretion, to rescind the Settlement Agreement if a certain specified number of class members, as set forth in a separate, confidential supplemental agreement, exclude themselves from the settlement class. Settlement Agreement ¶ 6.2.

### III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The First Circuit maintains a strong policy favoring settlements, especially in class action cases. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009).

---

[6] "Released Parties" means Defendant New England Patriots LLC, as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

A proposed class action settlement must be approved by a district court in keeping with the two-stage process set forth in Federal Rule of Civil Procedure 23(e). At the preliminary approval stage, the court must determine whether it "will likely be able to" (1) certify the class for purposes of judgment on the proposed settlement and (2) finally approve the proposed settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). The court's role is to assess whether "the settlement appears to fall within the range of possible final approval." *Del Sesto v. Prospect Chartercare, LLC*, No. 18-cv-00328, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019) (citations and internal quotation marks omitted). Then, after the class is given notice and an opportunity to object to the proposed settlement, the court holds a hearing to consider whether to grant final approval of the settlement and certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2), (4), (5). "[T]he ultimate decision by the [district court] involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Cohen v. Brown Univ.*, 16 F.4th 935, 944 (1st Cir. 2021) (quotations omitted).

As outlined below, preliminary approval of the Settlement is warranted. ***First***, the Class satisfies the requirements of Rule 23(a) and the Court will likely be able to certify the Class at the final approval stage under Rule (b)(2) and (b)(3). ***Second***, the Court will likely be able to finally approve the proposed Settlement—calling for substantial monetary relief and business practice changes—as fundamentally fair, reasonable, and adequate. ***Third***, the proposed Notice Plan satisfies the requirements of Rule 23(c)(2). Accordingly, the Court should grant Plaintiff's motion for preliminary approval of the class action settlement and direct notice to the Class.

## A.  The Court will be able to certify the proposed Class.

Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e). "When a settlement class is proposed, it is incumbent on the

district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005). "In the settlement context, however, there is an important refinement to [the class-certification] analysis: the court 'need not inquire whether the case, if tried, would present intractable management problems.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Class certification is a two-step process: First, Plaintiff must establish numerosity, commonality, typicality, and adequacy under Rule 23(a). Second, Plaintiff must establish that one of the bases for certification under Rule 23(b) is met. Plaintiff contends, and Defendant does not dispute for settlement purposes only, that the proposed Settlement Class meets the requirements for class certification under Rule 23(a), (b)(2), and (b)(3).

### 1. The Class satisfies the requirements of Rule 23(a).

#### a. Class Members are too numerous to be joined.

The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The threshold for establishing numerosity is low, and '[c]lasses of 40 or more have been found to be sufficiently numerous.'" *Meaden v. HarborOne Bank*, No. 23-cv-10467, 2023 WL 3529762, at *2 (D. Mass. May 18, 2023) (quoting *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010)). Here, the number of Class Members is approximately 105,000 people, which easily satisfies the numerosity requirement. Orenstein Decl. ¶ 3.

#### b. There are common questions of law and fact.

Rule 23(a)(2) requires that there be one or more questions of law or fact common to the class. "The threshold for commonality under Rule 23(a)(2) is not high." *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 54 (D. Mass. 2010). There must be at least one common issue of fact or law that shapes the class such that the resolution "affect[s] all or a substantial number of the class members." *Id.*

– 8 –

Here, Plaintiff readily meets this standard, as many significant common questions of law and fact exist, including:

i.    Whether Defendant is a video tape service provider within the meaning of the VPPA;

ii.   Whether the information that Defendant allegedly disclosed to third parties constitutes PII under the VPPA;

iii.  Whether Defendant knowingly disclosed Class Members' PII to third parties;

iv.   Whether Defendant gave notice to Class Members regarding the disclosure of such information;

v.    Whether Defendant obtained informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing such information to third parties;

vi.   Whether Defendant's conduct violates the VPPA; and

vii.  Whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquires is Defendant's alleged common course of conduct—namely, Defendant's knowing disclosure of Class Members' PII through its use of the Rover SDK and Anvato API. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016) ("[B]ecause there are common questions of both law and fact, including the course of [defendant's] conduct with customer purchasing information and the applicability of [the Michigan Video Rental Privacy Act] to that conduct, the commonality requirement is satisfied."). Thus, commonality is satisfied.

### c. Plaintiff's claims are typical of the Class.

The typicality requirement is satisfied when the representative party's claims are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "[T]he plaintiff needs only to demonstrate that his or her 'injuries arise from the same events or course of conduct as do the injuries of the class' and that the 'plaintiff's claims and those of the class are based on the same legal theory.'" *Meaden*, 2023 WL 3529762, at *2 (quoting *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008)).

Typicality does not require the claims of the representative plaintiff to be completely identical to those of the class. *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019).

Here, Plaintiff's claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of Settlement Class Members. When a Class Member requested or obtained specific videos through the Patriots App, the App allegedly used the Anvato and Rover APIs to transmit Class Members' PII to Google and Rover. While Class Members may not have requested or obtained the same video materials through the Patriots App, the transmission of the PII allegedly occurred in precisely the same way. *See, e.g.*, D.E. 1, Class Action Compl. ¶¶ 81–86. Accordingly, Plaintiff's claims are typical of the Class because he was subject to the same conduct as the other Class Members, and he is alleged to have suffered the same injury as a result. *Meaden*, 2023 WL 3529762, at *2.

### d. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the class.

The adequacy requirement is satisfied when the class representative is able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires first "that the class representative's interests do not conflict with any potential class member, and [second], that the class counsel can adequately represent the interests of the class." *Meaden*, 2023 WL 3529762, at *3 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)); *accord Bertella v. JetDirect Aviation, Inc.*, No. 09-cv-10527, 2010 WL 4103664, at *3 (D. Mass. Oct. 19, 2010).

Plaintiff has no interests in conflict with those of the Settlement Class. Specifically, Plaintiff and Class Members are equally interested in obtaining relief for Defendant's alleged misconduct and ensuring that Defendant reforms its business practices. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015) (concluding that adequacy requirement was met where plaintiff's "interests align with those of the class as a whole, because all seek redress from the same injury"); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 71 (D. Mass. 1999) (concluding that class representative was

adequate where, "[l]ike the [c]lass overall, [the plaintiff] fell victim to [the defendant's] alleged scheme and, as such, the representatives and the [c]lass share the same interest in seeking remediation for their injury"). Moreover, throughout the pendency of this action, Plaintiff has adequately and vigorously represented his fellow Class Members. He has spent significant time assisting his counsel, including by providing pertinent information regarding his use of the Patriots App. Orenstein Decl. ¶ 4. These same facts support Plaintiff's appointment as Class Representative for the Settlement Class.

Second, Class Counsel have extensive experience litigating, trying, and settling class actions, including consumer privacy cases like this one, throughout the country. Orenstein Decl. ¶ 5 Courts across the country have recognized Class Counsel's experience in complex class litigation and their skilled and effective representation. *Id.* The pre-filing investigation conducted by Class Counsel provided them with sufficient information to evaluate Defendant's representations, which allowed Class Counsel to adequately assess the strengths and weaknesses of Plaintiff's case and balance the benefits of settlement against the risks of litigation. Orenstein Decl. ¶ 6. In sum, Class Counsel "is qualified, experienced and able to vigorously conduct the proposed litigation." *Bertella*, 2010 WL 4103664, at *3 (quoting *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 406 (D. Mass. 2007)).

Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the Settlement Class. Considering counsel's work in this action, their collective familiarity and experience in handling similar actions, and the resources they have committed to representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3) and confirmed under Rule 23(g)(1). Orenstein Decl ¶¶ 5-6.

### 2. The Class satisfies the requirements of Rule 23(b)(2).

Where, as here, Plaintiff seeks injunctive relief, class certification under Rule 23(b)(2) is warranted when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Moreover, "[w]hen a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63 (2011).

Here, Defendant's alleged conduct applies to the whole Class. When a Class Member requested or obtained specific videos through the Patriots App, the App allegedly used the Anvato API and Rover SDK to transmit Class Members' PII to Google and Rover. While Class Members may not have requested or obtained the same video materials through the Patriots App, the transmission of the PII allegedly occurred in precisely the same way. Thus, the injunctive relief offered by the settlement—that Defendant will suspend any known transmission (to the extent any is occurring) by the Patriots App to Google and Rover of Precise Geolocation data in connection with a users' viewing of prerecorded materials—is an indivisible injunction that will benefit all Class Members at once. *See* Settlement Agreement ¶ 2.2.

Class certification under Rule 23(b)(2) is therefore warranted.

### 3.  The Class satisfies the requirements of Rule 23(b)(3).

Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Meaden*, 2023 WL 3529762, at *3.

### a.  Common issues of law and fact predominate for settlement purposes.

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also* 7AA Wright & Miller, FED. PRAC. & PROC. CIV. § 1778 (3d ed. 2023)

– 12 –

("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."). "This standard can be met if the common issues predominate, even if some individual issues arise in the course of litigation." *Meaden*, 2023 WL 3529762, at *3 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual or legal issues, and because the core facts involve Defendant's uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiff alleges that Defendant knowingly utilized the Anvato API and Rover SDK to disclose Class Members' PII to Google and Rover, and that this conduct uniformly injured Plaintiff and the other Class Members' legally protected interests under the VPPA. In other words, "[Plaintiff] alleges that all class members are entitled to the same legal remedies premised on [Defendant's] same alleged wrongdoing, and the issues affecting every claimant are substantially the same." *Meaden*, 2023 WL 3529762, at *3. This case therefore falls within the "types of cases [that] are uniquely well-suited to class adjudication"—namely, those based on uniform violations the same statutory right. *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 56 (D. Mass. 2010).

### b.  A class action is a superior means of resolving this controversy.

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Where, as here, "there are thousands of potential class members with small claims resulting from a common issue, a class action is the most feasible mechanism for resolving the dispute." *Meaden*, 2023 WL 3529762, at *3.

Further, there is no realistic alternative to a class action here: individual lawsuits by Class Members would be inefficient, and most members would find the cost of litigating individual claims to be prohibitive. *See Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66–67 (1st Cir. 2010) ("Rule 23 has to

be read to authorize class actions in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable.").

Accordingly, this Court will likely be able to certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

## B. The settlement is fair, reasonable, and adequate.

### 1. The settlement is the product of good-faith, arm's-length negotiations among experienced counsel.

The proposed settlement is the result of good-faith negotiations among Plaintiffs' counsel and Defendant. Those negotiations were contentious and hard-fought, and there is no indication that the proposed settlement is collusive. After briefing on Defendant's motion to dismiss was completed, the parties met and conferred numerous times to discuss the strengths and weaknesses of the claims and potential defenses. Although no formal discovery was conducted because the motion to dismiss was pending, Defendant provided Plaintiff with information about the size of the proposed Class and the technology at issue. Before initiating this action, Plaintiff's counsel investigated Defendant's use of APIs to allegedly transmit Class Members' PII to Google and Rover. Plaintiff's counsel were therefore able to critically appraise the information provided by Defendant. Thus, both sides were well positioned to evaluate their positions, and the proposed settlement is the result of informed and zealous negotiations.

Moreover, Plaintiff is represented by counsel with extensive experience and expertise representing plaintiffs—and negotiating favorable settlements—in complex consumer-protection, antitrust, securities, and healthcare class actions (among others). Orenstein Decl. ¶ 5.

### 2. The settlement treats all Class Members equitably.

The proposed Settlement establishes a common fund, from which payments will be distributed to Settlement Class Members that submit valid claims on a *pro rata* basis. *See* Settlement Agreement ¶¶ 1.12, 2.1.2–3. The Settlement does not provide preferential treatment to Plaintiff or any segments of

– 14 –

the proposed Settlement Class. The injunctive relief provided by the settlement, moreover, will equally benefit all members of the Settlement Class.

This factor thus weighs in favor of preliminary approval.

**3. The relief under the proposed settlement is adequate.**

The benefits of the proposed Settlement are sufficient to support notice to the Class. The $2.160 million Settlement Fund represents a significant monetary recovery. Initial data indicates that there are approximately 105,000 persons in the United States who used the Patriots App during the Class Period and who may have had their Precise Geolocation data transmitted to third parties in connection with their accessing a prerecorded video through the App. Assuming 10% of the Class Members will submit claims, *pro rata* payments from the Net Settlement Fund would amount to approximately $120 to each claimant, based on a Net Settlement Fund of $1.26 million.[7] That benefit alone would be substantial— and comparable to what plaintiffs recently have obtained in other VPPA cases in this district. *See, e.g.*, Prelim. Approval Order, *Fiorentino v. FloSports, Inc.*, No. 1:22-CV-11502-AK (D. Mass Aug. 23, 2023), ECF No. 63 (granting preliminary approval of class-action settlement where total settlement amount was $2.625 million and plaintiff estimated that *pro rata* amount received by each claimant would be approximately $73 based on 5% claims rate); Order Granting Prelim. Approval of Class Action Settlement Agreement, *Ambrose v. Boston Globe Media Partner*s, LLC, No. 1:22-cv-10195-RGS (D. Mass. May 25, 2023), ECF No. 52 (granting preliminary approval of class-action settlement totaling $4 million, where plaintiff estimated that *pro rata* payments to each claimant would be between $22 to $44 based on claims rate 10 to 20%).

---

[7] The Net Settlement Fund is the amount remaining for distribution to the Class after deducting settlement-administration expenses, any plaintiff service award ordered by the Court, and any award of attorneys' fees and costs ordered by the Court. Settlement Agreement ¶ 1.17.

In addition to monetary relief, the Settlement also includes valuable injunctive relief—namely, that Defendant will suspend any known transmission by the Patriots App (to the extent any is occurring) to Google and Rover of Precise Geolocation data in connection with a users' viewing of prerecorded materials (to the extent any is occurring). *See* Settlement Agreement ¶ 2.2. This is notable because it is the same injunctive relief Plaintiff would have sought following trial. *Bezdek*, 79 F. Supp. 3d 324 (finding "injunctive relief to be a valuable contribution to th[e] settlement agreement" and noting that "[i]njunctive relief has been recognized as a meaningful component of a settlement agreement, particularly where it mimics the injunctive relief that the plaintiffs could achieve following trial").

In sum, the Settlement represents a very favorable result for Class Members, who will benefit from not only monetary relief but also forward-looking changes to Defendant's business practices. The relief provided through the proposed Settlement is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. See Fed. R. Civ. P. 23(e)(2)(i)–(iv).

***Risks of further litigation.*** Although Plaintiff is confident in the strength of his claims, he nevertheless recognizes that this novel litigation is inherently risky. Claims applying the VPPA to APIs and SDKs like those at issue in this case are still relatively untested. Furthermore, absent the Settlement, Plaintiff would have to conduct formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from Defendant and issuing subpoenas against third parties like Google. Assuming that Plaintiff survived summary judgment—in which Defendant likely would raise many of the same arguments proffered in support of its motion to dismiss (*see* D.E. 46, Mem. of Law in Supp. of Mot. to Dismiss)—Plaintiff would need to certify and maintain a class over Defendant's opposition. Plaintiff then would need to prevail at trial and secure an affirmance on appeal before

recovering damages. Ultimately, continued litigation could delay resolution of this case for several years.

The Court's acceptance and approval of the Settlement is preferable to the continuation of lengthy and expensive litigation, which would only increase risk of a substantially lower recovery (or no recovery at all). This factor weighs in favor of preliminary approval of the Settlement.

***Proposed method of distributing relief.*** As detailed in the Declaration of Cameron R. Azari, Esq., attached as Exhibit 6 to the Orenstein Decl. (the "Azari Decl."), Epiq Class Action and Claims Solutions, Inc. ("Epiq") has designed a detailed and comprehensive Notice Plan that provides the best notice to Class Members that is practicable under the circumstances. Importantly, the Settlement contemplates the use of a simple, straightforward Claim Form, designed to maximize the number of claims made, *See* Ex. A to [Proposed] Class Action Settlement (Orenstein Decl. Ex. 1); Azari Decl. ¶¶ 20, 29, 32, as well as in-app settlement notices that will be shown to current users of the Patriots App along with publication notices for any user that downloaded the Patriots App and is therefore likely to reach many of the Class Members. Azari Decl. ¶¶ 17-32. Settlement Class Members who submit an Approved Claim will automatically receive payment either by mailed check or by electronic means (namely, Paypal or Venmo). *See* Settlement Agreement ¶ 2.1.2.

***Attorneys' fees and expenses.*** Plaintiff's counsel may move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii). Specifically, in accordance with the Settlement terms, Plaintiff's counsel anticipate requesting that the Court award a total Fee Award, comprised of an award of attorneys' fees not to exceed one-third of the common Settlement Fund for fees as well as reimbursement of expenses. *See* [Proposed] Class Action Settlement ¶¶ 1.13, 8.1. Such a request would be well within the range of approval. *See In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (citing 2010 study of federal class

action fee awards concluding that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund"); *see also Mazola v. May Dep't Stores Co.*, No. 97-cv-10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range [from] 20% to 35% of the fund.").  Plaintiff's counsel also will apply for a service award of up to $5,000 to the Plaintiff to compensate him for his efforts and commitment on behalf of the Settlement Class in his role as Class Representative. *See* [Proposed] Class Action Settlement ¶ 8.3.

Plaintiff's counsel will file their fee application, which will provide additional support for any requested attorneys' fees, reimbursement of litigation expenses, and service award, in accordance with the schedule to be set by the Court.

***Other agreements.*** Pursuant to Rule 23(e)(3), aside from the confidential supplemental agreement referenced in Section II.D.4, there are no other agreements that would modify any term of the Settlement.

### 4. Plaintiff's counsel are highly experienced in similar litigation and their opinion regarding the Settlement is entitled to considerable weight.

As discussed above in § III.B.1, Plaintiff's counsel have extensive experience litigating and settling complex consumer class actions throughout the country. Orenstein Decl. ¶ 5. Based on their collective experience, Plaintiff's Counsel conclude that the Settlement provides exceptional results for the Class while avoiding the costs, delays, and uncertainties of continued litigation. Orenstein Decl. ¶ 6. Counsel's opinion is entitled to "significant weight" and further supports a preliminary presumption of fairness. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

**C.  The proposed Notice Plan should be approved.**

Before a proposed class settlement may be finally approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Where seeking certification of a Rule 23(b)(3) settlement class, the notice must also comply with Rule 23(c)(2)(B), which requires "[a]t a minimum" that the notice inform class members of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Meaden*, 2023 WL 3529762, at *4 (quoting Fed. R. Civ. P. 23(c)(2)(B)). In short, the notice must "inform class members of their rights to exclude themselves from the settlement and not to be bound by any judgment that subsequently issues from final approval." *Id.* (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)).

The proposed Notice Plan here meets all of the applicable standards. *See* Settlement Agreement ¶ 4. The Notice Plan includes direct notice to Settlement Class Members via one push notification through the Patriots App and the "My Inbox" section of the App; publication notices in a form and manner that target Class Members; and the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the long-form Class Notice, and other key case documents. *See* Settlement Agreement ¶ 4.1; Azari  Decl. ¶ 29. Moreover, the proposed forms of notice (*see* [Proposed] Class Action Settlement Exhibits B, C, D, E, F, G (Orenstein Decl. Ex. 1)) inform Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B). Azari Decl. ¶ 18.  In addition, the Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Class and to direct financial payments to Class Members without requiring the

– 19 –

submission of additional documents. *See* [Proposed] Class Action Settlement Exhibit A (Orenstein Decl. Ex. 1). For all of these reasons, the proposed Notice Plan should be approved.

## IV.    PROPOSED SCHEDULE FOR NOTICE AND FINAL APPROVAL

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow them an opportunity to exclude themselves or file comments or objections, and hold a final approval hearing. In accordance with the proposed preliminary approval order submitted herewith, Plaintiff requests the Court set the following schedule:

| Event | Deadline |
|---|---|
| Last day for Settlement Administrator to complete distribution of notice to the Settlement Class (the "Notice Date") | 45 days after entry of the Preliminary Approval Order |
| Last day for Plaintiff and Class Counsel to file motion for final approval and motion for attorneys' fees, expenses, and service awards | 30 days after Notice Date |
| Exclusion/Objection Deadline | 45 days after Notice Date |
| Response to any objections | At least 14 days before Final Approval Hearing |
| Suggested Claims Deadline and last day for Plaintiff to file responses to any objections | 45 days after the date of the Final Approval Hearing |
| Final Approval Hearing | At least 90 days after Notice Date |

## V.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion for Preliminary Approval. A Proposed Order granting preliminary approval of the Settlement, certifying the Settlement Class, and appointing Class Counsel, and approving the Proposed Notice of Settlement, is submitted along with this Motion.

Dated: May 8, 2025                                  Respectfully submitted,

                                                              **PLAINTIFF ANTHONY SERRA**

                                                              */s/ Nathaniel L. Orenstein*
                                                              Nathaniel L. Orenstein (BBO #664513)
                                                              Patrick T. Egan (BBO #637477)
                                                              Christina L. G. Fitzgerald (BBO #709220)

– 20 –

**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
norenstein@bermantabacco.com
pegan@bermantabacco.com
cfitzgerald@bermantabacco.com

Kevin Landau
Brett Cebulash
Joshua O. Hall
**Taus, Cebulash & Landau, LLP**
123 William Street, Suite 1900A,
New York, NY 10038
Tel: 212-931-0704
klandau@tcllaw.com
bcebulash@tcllaw.com
jhall@tcllaw.com

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
Joe E. Nelson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
jnelson@gustafsongluek.com

Kenneth A. Wexler
Justin N. Boley
Zoran Tasić
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450,
Chicago, IL 60606
Tel: 312-346-2222
Fax: 312-346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com

*Counsel for Plaintiff*

– 21 –

## <u>CERTIFICATE OF SERVICE</u>

I, Nathaniel L. Orenstein, hereby certify that on May 8, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: May 8, 2025                                      _/s/ Nathaniel L. Orenstein_
                                                                     Nathaniel L. Orenstein