IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

ANTHONY SERRA, individually and on behalf of all others similarly situated,

Plaintiff,

*v.*

NEW ENGLAND PATRIOTS LLC,

Defendant.

Case No. 4:24-cv-40022-MRG

Hon. Margaret R. Guzman

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

## Table of Contents

Page No.

I. Introduction....1

II. Overview of the Litigation....2

A. Summary of Plaintiffs' Allegations....2

B. Informal Discovery, Mediation, and Settlement....3

C. Preliminary Approval of the Settlement....5

III. Summary of the Settlement's Terms....5

A. The Settlement Class....5

B. The Settlement's Benefits....6

C. Plaintiff's Request for Attorneys' Fees, Litigation Costs, and a Service Award....7

IV. Legal Standard....7

V. Argument....9

A. The Settlement is fair, reasonable, and adequate....9

1. The Class Representative and Class Counsel have provided excellent representation to the Settlement Class....9

2. The Settlement was negotiated at arm's length by capable counsel informed through a developed factual record, with no signs of collusion....10

3. The Settlement provides meaningful relief to the Settlement Class....11

a. Continued litigation would be risky, complex, lengthy, and expensive....12

b. The Settlement provides meaningful relief to members of the Settlement Class through a simple and straightforward claims process....13

c. The requested attorneys' fees and costs are reasonable, reflective of the quality of counsels' skills and work, and in line with similar awards approved by courts both inside and outside of the First Circuit....14

d. There is no agreement required to be identified under Rule 23(e)(3)....14

4. The Settlement treats all members of the Settlement Class equally....14

5. The reaction of the Settlement Class supports final approval....15

6. Class counsel are highly qualified and well-informed, and their opinion regarding the Settlement is entitled to considerable weight....15

B. The Notice Plan satisfies Rule 23 and due process, and constitutes the best notice practicable. ..... 16

VI. Certification of the Settlement Class is Appropriate..... 18

VII. Conclusion ..... 19

## Table of Authorities

Page(s)

**Cases**

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) .......... 12, 15

*Bezdek v. Vibram USA, Inc.*,
809 F.3d 78 (1st Cir. 2015) .......... 11

*Bussie v. Allmerica Fin. Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) .......... 16

*Carlin v. DairyAmerica, Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019) .......... 14

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir.1974) .......... 8

*Cohen v. Brown University*,
16 F.4th 935 (1st Cir. 2021) .......... 8

*Grice v. Pepsi Beverages Co.*,
363 F. Supp. 3d 401 (S.D.N.Y. 2019) .......... 14

*In re Educ. Testing Serv.*,
447 F. Supp. 2d 612 (E.D. La. 2006) .......... 16

*In re Lupron(R) Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .......... 8, 18

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
58 F. Supp. 3d 167 (D. Mass. 2014) .......... 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) .......... 7, 9

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) .......... 11

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
538 F. Supp. 3d 208 (D. Mass. 2021) .......... 18

*Lazar v. Pierce*,
757 F.2d 435 (1st Cir. 1985) ....................7

*Mazola v. May Dep't Stores Co.*,
No. 97-cv-10872, 1999 WL 1261312, at (D. Mass. Jan. 27, 1999) ....................14

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
55 F.4th 340 (1st Cir. 2022) ....................9

*Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*,
No. 15-cv-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ....................9, 10

*O'Donnell v. Harris County, Texas*,
No. 16-cv-01414, 2019 WL 4224040, at (S.D. Tex. Sept. 5, 2019) ....................16

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000) ....................16

*Walsh v. Popular, Inc.*,
839 F. Supp. 2d 476 (D.P.R. 2012) ....................8

**Statutes**

18 U.S.C. § 2710 ....................19
28 U.S.C. § 1715 ....................5

**Rules**

Fed. R. Civ. P. 23(e)(2) ....................7, 8, 9, 12
Federal Rule of Civil Procedure 23 .................... 1, 5, 11
Federal Rule of Civil Procedure 23(c) ....................2, 19
Federal Rule of Civil Procedure 23(e) .................... 7, 8, 9, 12, 14

# I. INTRODUCTION

Plaintiff Anthony Serra respectfully requests that the Court grant final approval of the Settlement, consistent with Federal Rule of Civil Procedure 23, the Class Action Settlement Agreement (ECF no. 68-1), and the Court's Preliminary Approval Order (ECF No. 70). The Settlement is the product of arm's-length negotiation after robust informal discovery.

The Settlement will fully resolve this litigation, create a $2.16 million non-reversionary cash fund for the benefit of the Settlement Class, and requires Defendant to to suspend (1) any known transmission (to the extent any is occurring) by the Patriots App to Anvato through the Anvato API of Precise Geolocation data in connection with a user's viewing of pre-recorded video materials, and (2) any known transmission (to the extent any is occurring) by the Patriots App to Rover through the Rover SDK of Precise Geolocation data in connection with a user's viewing of pre-recorded video materials.

The notice program has been highly successful. All potential Class Members who currently have the Patriots app installed on their devices have received in-app notices through the "My Inbox" section of the app and/or a push notification (on those devices that have push notifications enabled). Claim packages were also mailed to those Class Members who requested them, and targeted digital advertising was used to display notices through the Google Display Network and YouTube to potential Class Members nationwide. In addition, sponsored search listings ran on the three most highly visited search engines—Google, Yahoo!, and Bing—to facilitate potential Class Members' locating the Settlement Website. To date, no requests for exclusion or objections to the settlement have been received by the Settlement Administrator, Epiq Class Actions and Claims Solutions, Inc. ("Epiq"). Class Counsel will provide an update on implementation of the notice plan and the claims process,

report on any requests for exclusion, and respond to any substantive objections by September 25, 2025.

In sum, the Settlement satisfies all criteria for final approval. Plaintiff therefore respectfully requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) certify the Settlement Class; (iii) find that the Notice Plan satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process, and constitutes the best notice practicable under the circumstances; and (iv) enter final judgment.

## II. OVERVIEW OF THE LITIGATION

### A. Summary of Plaintiffs' Allegations

Plaintiff alleges that Defendant, an NFL team who operates the Patriots App that includes video streaming, intentionally installed and incorporated Rover's SDK and Google's Anvato API (together "APIs") into the Patriots App. ECF No. 1 ("Complaint" or "Compl.") ¶¶ 13–59. The Anvato API is a tool that businesses like the Patriots incorporate into their mobile phone applications to deliver videos to consumers, track consumers' actions, and report those actions back to Google for better targeting and delivering advertisements. *Id.* ¶¶ 25–43. The Patriots' use of the Anvato API allegedly allows the Patriots, and by extension Google, to track the Precise Geolocation of consumers and allows Google to build detailed profiles about Patriots App users, including which videos they've watched, and facilitates the Patriots' use of Google's advertising services. *Id.* ¶¶ 27–43.

Similarly, the Rover API, developed by Rover Labs Inc. ("Rover"), is a tool that businesses like the Patriots incorporate into their mobile phone applications to track consumers' actions and report those actions back to Rover in order to better target consumers for engagement and monetization. *Id.* ¶¶ 44–48. Plaintiff alleges that the Patriots' use of the

Rover API allows the Patriots, and by extension Rover, to track the Precise Geolocation of consumers through the use of Rover's Location module, which was knowingly installed by the Patriots. *Id.* ¶¶ 47–53. The Rover API also is alleged to collect the titles of any videos viewed by consumers in the Patriots App. *Id.*

Plaintiff alleges that the Patriots knowingly configured the APIs to share App users' personally identifiable information ("PII"). *Id.* ¶¶ 27–30, 35–38. For instance, when a Patriots App user views a particular video on the app, the Patriots App allegedly sends the title and URL of that video to Google via the Anvato API. *Id.* ¶¶ 28–29. At the same time, the Patriots App allegedly sends the Android Advertising ID (or "AAID") of any users who are using an android device to Google via the Anvato API. *Id.* ¶¶ 36–38. An AAID is a unique identifier that third parties can use to track user activity across multiple mobile phone applications. *Id.*

Plaintiff, Anthony Serra, was a Patriots App user who viewed videos in the Patriots App during the relevant period and who allegedly had his PII and watch history shared with Google and Rover. *Id.* ¶ 7. After Plaintiff downloaded the Patriots App on his phone he watched multiple videos. *Id.* Whenever he did so, the Patriots allegedly sent to Google and Rover, without his consent and via the APIs, the title and URL of the video he accessed as well as his PII, including his Precise Geolocation.

**B. Informal Discovery, Mediation, and Settlement**

Plaintiff filed this case on behalf of himself and all those similarly situated Patriots App users on February 1, 2024, alleging violation of the VPPA. ECF No. 1. The Patriots moved to dismiss the Complaint on April 30, 2024. ECF No. 45. Plaintiff responded on June 14, 2024, filing a memorandum in opposition to the motion to dismiss, to which the Patriots

filed a reply on November 19, 2024. (ECF No. 50, 54). On November 25, 2024, Plaintiff filed a notice of supplemental authority in support of his opposition to the motion to dismiss, and the Patriots filed a response thereafter. (ECF No. 56, 57).

While the motion to dismiss was pending, the Parties discussed the prospect of resolution. As part of these discussions, Defendant provided Plaintiff with information about how the Patriots App operated during the relevant time period, the information that the Patriots received through the Patriots App, the third-party technologies that allegedly received Plaintiff's personally identifying information and the information they received, and the potential class size. The parties also had extensive discussions about the specific strengths and weaknesses of Plaintiff's claims and Defendant's defenses. These discussions took place over a number of months directly between counsel and were at all times at arms' length. The parties reached an agreement in principle on January 31, 2025. Ex. A, Decl. of Kevin Landau in Supp. of Pls.' Mot. for Final Approval of Class Settlement and Mot. for Attorneys' Fees, Litigation Costs, and Service Award ¶ 11 [hereinafter "Landau Decl."].

After that, on February 3, 2025, the parties sought a stay of the litigation for the purpose of committing the agreement in principle to formal settlement documentation and presentation to the Court to seek preliminary approval of the settlement. (ECF No. 58). The Court granted the Parties' joint request for a stay on February 4, 2025, (ECF No. 59) and extended the stay on March 14, 2025 (ECF No. 61) and April 15, 2025 (ECF No. 63).

On May 8, 2025, the parties finalized and executed the Settlement now before the Court.

### C. Preliminary Approval of the Settlement

On May 5, 2025, a Motion for Preliminary Approval of the Class Action Settlement (ECF No. 66) and supporting memorandum of law (ECF No. 67). This Court granted preliminary approval of the Settlement on May 30, 2025, finding, among other things, that:

- "the Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class,"
- "the Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation," and
- "the Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel; (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by Defendant."

ECF No. 70, Order Preliminarily Approving Proposed Class Action Settlement ¶ 3 [hereinafter "Preliminary Approval Order"].

## III. Summary of the Settlement's Terms

### A. The Settlement Class

The Settlement Class is comprised of:

> All individuals residing in the United States who are or have been users of the Patriots App with location services enabled, and who requested or obtained any prerecorded (including on-demand replay) videos available on the Patriots App, during the Class Period.[1]

ECF No. 70, Preliminary Approval Order ¶ 4.

---

[1] The Settlement Class excludes "(1) any judge presiding over this action, the judge's staff, and members of the judge's immediate family; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from

**B. The Settlement's Benefits**

The Settlement provides Settlement Class Members with both monetary and on-monetary benefits. If the Settlement is approved, Defendant will contribute $2,160,000 to a "Settlement Fund" in full satisfaction of all Settlement costs, including all payments to Settlement Class Members, Notice and Administrative Costs, Attorneys' Fees and Expenses, Settlement Class representative Service Awards, and taxes. ECF No. 68-1, Settlement Agreement ¶¶ 1.33, 1.36, 2.1. Settlement Class Members who submit valid claims will receive a *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service award. *Id.* ¶¶ 1.17, 2.1.2–2.1.3. In the event that residual funds remain after a secondary distribution, those residual funds will be disbursed to a non-sectarian and/or not-for-profit organization recommended by Class Counsel and approved by the Court. *Id.* ¶ 2.1.3. No money will revert back to Defendant. *Id.*

In addition to the substantial monetary relief, the Settlement provides for substantive injunctive relief. Settlement Agreement ¶ 2.2. Since the Court's preliminary approval of the Settlement, Defendant has complied with the Settlement Agreement by suspending any known transmission (to the extent any is occurring) by the Patriots App to Anvato through the Anvato API of Precise Geolocation data in connection with a user's viewing of pre-recorded video materials. Ex. A, Landau Decl.¶ 22. Similarly, Defendant has suspended any known transmission (to the extent any is occurring) by the Patriots App to Rover through the

---

the class; and (4) the legal representatives, successors, or assigns of any such excluded persons." ECF No. 70.

Rover SDK of Precise Geolocation data in connection with a user's viewing of pre-recorded video materials. *Id.*

In exchange for the relief described above, Plaintiff and Class Members shall release all claims that have or could have been asserted against Defendant relating to the facts, transactions, or events alleged in this action. *See id.* ¶¶ 1.27 (Released Claims), 1.28 (Released Parties), ¶ 1.29 (Releasing Parties), 3.1–3.2 (Release).

### C. Plaintiff's Request for Attorneys' Fees, Litigation Costs, and a Service Award

As provided for in the Settlement Agreement, Plaintiff is requesting by a separate motion an award of attorneys' fees and litigation costs that, combined, are equal to one third of the Settlement Fund, or $720,000, to compensate Class Counsel for the work already performed in this case, all work remaining to be performed in connection with the Settlement, the risks undertaken in prosecuting this case, and their out-of-pocket litigation expenses. That motion also seeks a service award of $5,000 for Plaintiff's efforts in serving as the Class Representative. The enforceability of the Settlement is not contingent on the Court's approval of that motion. *See* Settlement Agreement ¶¶ 6.4, 8.5.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class actions. A class action should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The First Circuit has recognized a strong policy favoring settlements, especially in class actions. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st Cir. 2009); *Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985).

Rule 23(e)(2) provides that, in determining whether a settlement is "fair, reasonable, and adequate," the Court should consider whether:

> (A) the class representatives and counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment;
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Along with these Rule 23(e)(2) factors, courts in this Circuit also consider a modified version of the factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974). *See, e.g.*, *Walsh v. Popular, Inc.*, 839 F. Supp. 2d 476, 480 (D.P.R. 2012); *In re Lupron(R) Mktg. & Sales Practices Litig*., 228 F.R.D. 75, 93 (D. Mass. 2005); *Cohen v. Brown University*, 16 F.4th 935, 943 n.5 (1st Cir. 2021) ("[T]he Advisory Committee noted that the amendment was not intended to 'displace any factor' previously in use."). The modified *Grinnell* factors considered in the First Circuit include:

> (1) risk, complexity, expense and duration of the case; (2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations.

*Walsh*, 839 F. Supp. 2d at 480; *Lupron(R) Mktg.*, 228 F.R.D. at 93.

## V. ARGUMENT

### A. The Settlement is fair, reasonable, and adequate.

A settlement is fair, reasonable, and adequate under Rule 23(e)(2) if it is procedurally and substantively fair, meaning that it was reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery and provides adequate relief to the Class in comparison to continued litigation. *See, e.g.*, *Nat'l Ass'n of Deaf v. Mass. Inst. of Tech.*, No. 15-cv-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32–33. As set forth below, the Rule 23(e)(2) and modified *Grinnell* factors show that the Settlement here meets those criteria. As such, the Settlement is fair, reasonable, and adequate and should be finally approved.

#### 1. The Class Representative and Class Counsel have provided excellent representation to the Settlement Class.

Rule 23(e)(2)(A)'s "adequate representation inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022) (internal quotation marks omitted). In this context, "only those conflicts that are fundamental to the suit and . . . go to the heart of the litigation" present a conflict "so substantial as to overbalance the common interests of the class members as a whole." *Id.* at 346.

Here, the Settlement Class Representative, Anthony Serra, has adequately represented the Settlement Class in this action. He has been actively involved throughout the course of the litigation and Settlement, assisting Class Counsel in investigating the claims on an individual basis, remaining apprised of the litigation, submitting information necessary for informal discovery efforts, and overseeing settlement negotiations. Decl. of Anthony Serra in Supp. of Pls.' Mot. for Att'y Fees, Expenses, and Service Awards ¶¶ 2–4 [hereinafter "Serra Decl."].

These efforts, including the risks he voluntarily took as well as the time he expended advancing the litigation, were crucial to achieving the excellent result for the Settlement Class. Ex. A, Landau Decl. ¶ 41.

Class Counsel likewise have adequately represented the Settlement Class. They are well-qualified class-action litigators with extensive experience and expertise representing plaintiffs—and negotiating favorable settlements—in complex consumer-protection, antitrust, securities, and healthcare class actions (among others). They have prosecuted and settled complex consumer class actions throughout the country. ECF No. 68, Orenstein Decl. ¶ 5; *see also* Ex. A, Landau Decl. ¶ 32.; *see also* Pls.' Mot. for Attorneys' Fees. In sum, Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) analyzing the legal arguments raised in The Patriots' motion to dismiss and filing a memorandum in opposition to the motion to dismiss; (iii) drafting and filing a notice of supplemental authority in support of their opposition to the motion to dismiss; (iv) negotiating at arms' length with opposing counsel across multiple months; (v) achieving a very favorable Settlement on behalf of the Settlement Class; and (vi) negotiating comprehensive settlement papers. Ex. A, Landau Dec. ¶ 24. Moreover, Class Counsel have no conflicts of interest with the Settlement Class.

**2. The Settlement was negotiated at arm's length by capable counsel informed through a developed factual record, with no signs of collusion.**

A settlement is procedurally fair and reasonable when it is the result of arm's-length negotiations between experienced counsel. *Nat'l Ass'n of Deaf*, 2020 WL 1495903, at *4. The parties' pre-negotiation exchange of discovery further contributes to a settlement's procedural fairness and reasonableness. *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp.

2d 448, 471 (D.P.R. 2011) (granting final approval of class settlement based in part on "the parties [being] sufficiently informed by the informal discovery that occurred").

Here, the Parties exchanged information and supporting materials outlining their respective legal positions regarding the merits of Plaintiff's claims, and Rule 23 considerations. Ex. A, Landau Decl. ¶ 11. During their negotiations—which spanned several months—the Parties vigorously defended their clients' positions and exchanged information related to the merits of Plaintiff's claims, how the Patriots App operated during the relevant time period, the information the Patriots received through the Patriots App, and the size and nature of the class. *See, e.g.*, Ex. A, Landau Decl. ¶¶ 11. That information allowed Plaintiff's counsel—attorneys with considerable experience in assessing the strengths and weaknesses of complex class actions—to make an informed assessment of the strengths and risks of the claims, as well as their value. *See* Ex. A, Landau Decl. ¶ 11.

Thus, the Settlement here is the result of arm's-length negotiations between experienced counsel, following a thorough investigation and development of the factual record through informal discovery.

Moreover, the Settlement itself bears no indicia of collusion: attorneys' fees were not negotiated separately, there is no "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to Defendant. *See, e.g.*, *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) (clear sailing provisions subject to "heightened scrutiny").

**3. The Settlement provides meaningful relief to the Settlement Class.**

When determining if the relief provided for the Settlement Class is adequate, courts must take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

processing class- member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). These factors are informed by the modified *Grinnell* factors adopted within the First Circuit. Here, all factors weigh in favor of final approval.

**a. Continued litigation would be risky, complex, lengthy, and expensive.**

While Class Counsel have calculated the maximum value of Plaintiffs' claims to be greater than the settlement amount, the maximum value of the claims of Plaintiff and Class Members must be discounted by the identifiable risks. *See, e.g.*, *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 345 (D. Mass. 2015).

Here, the risks of continued litigation are substantial. At the outset of the litigation, Defendant vigorously denied Plaintiff's allegations of wrongdoing, filing a motion to dismiss the Complaint. An adverse ruling on that motion would have resulted in dismissal of Plaintiff's claims and deprived the Settlement Class of any recovery whatsoever. Ex. A, Landau Decl. ¶¶ 26–27.

Moreover, claims applying the VPPA to APIs and SDKs like those at issue in this case are still relatively untested. Furthermore, absent the Settlement, Plaintiff would have to conduct formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from Defendant and issuing subpoenas against third parties like Google. Assuming that Plaintiff survived summary judgment—in which Defendant likely would raise arguments similar to those raised in support of its motion to dismiss (see ECF No. 46, Mem. of Law in Supp. of Mot. to Dismiss)—Plaintiff would need to certify and maintain a class over Defendant's opposition. Plaintiff then would need to prevail at

trial. Even if Plaintiff were to prevail through continued litigation and trial, Defendant would likely appeal. *Id.* ¶¶ 29–31.

In sum, continued litigation would have been lengthy and expensive, and the possibility of successful class-wide recovery uncertain.

**b. The Settlement provides meaningful relief to members of the Settlement Class through a simple and straightforward claims process.**

The Settlement provides a significant monetary recovery, especially when compared with the risks of continued litigation, as well as meaningful non-monetary relief. Any Settlement Class Member that submits a valid claim is entitled to a *pro rata* share of the Net Settlement Fund. Settlement Class Members are able to submit their Claims Form online via the Settlement Website or through the mail. Ex. B, Decl. of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Notice Plan ¶ 24 [hereinafter "Azari Decl."]. Settlement Class Members have the option of receiving a digital payment or a traditional paper check. ECF No. 68-1, Settlement Agreement ¶ 2.1.2. Thus, the methods of processing Settlement Class Members Claims Forms and distributing relief to Settlement Class Members are effective and non-burdensome.

In addition, the Settlement also includes valuable class-wide injunctive relief—namely, that Defendant will suspend any known transmission by the Patriots App (to the extent any is occurring) to Google and Rover of Precise Geolocation data in connection with a users' viewing of prerecorded materials (to the extent any is occurring). *See* Settlement Agreement ¶ 2.2. Under the Settlement Agreement, Defendant was required to implement these changes to its business practices within 45 days of the Preliminary Approval Order, which it has done. *Id.*; *see* Ex. A, Landau Decl. ¶ 22. Thus, Settlement Class Members are already receiving the benefit of the Settlement's non-monetary injunctive relief.

**c. The requested attorneys' fees and costs are reasonable, reflective of the quality of counsels' skills and work, and in line with similar awards approved by courts both inside and outside of the First Circuit.**

As set forth in Class Counsel's Motion for Attorneys' Fees, Class Counsel is seeking a total fee award not to exceed one-third of the common Settlement Fund, reimbursement of expenses, as well as a service award not to exceed $5,000. The requested fee award and service award are reasonable and directly in line with similar awards approved in the First Circuit and elsewhere. *See, e.g.*, *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (citing 2010 study of federal class action fee awards concluding that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Mazola v. May Dep't Stores Co.*, No. 97-cv-10872, 1999 WL 1261312, at *4 (D. Mass. Jan. 27, 1999) ("[I]n this circuit, percentage fee awards range [from] 20% to 35% of the fund."); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1024 (E.D. Cal. 2019) ("In the Ninth Circuit, courts have found that $ 5,000 is a presumptively reasonable service award." (citation omitted)). *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (agreeing with Class Counsel that $5,000 service award was "appropriate to compensate" the class representative where the Settlement Fund was $1,192,275).

**d. There is no agreement required to be identified under Rule 23(e)(3).**

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." There are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3).

**4. The Settlement treats all members of the Settlement Class equally.**

The Settlement is designed to benefit all Class Members equally and equitably, by providing equal access to the Settlement Fund and providing meaningful injunctive relief to

all Class Members regardless of whether they make a claim for monetary relief. Each Settlement Class Member may submit only one claim for monetary relief. Accordingly, each claimant that submits a valid claim will receive the same *pro rata* share of the Net Settlement Fund. Thus, there is no unfair or preferential treatment of any Settlement Class Member, and this factor weighs in favor of final approval.

**5. The reaction of the Settlement Class supports final approval.**

To date, not a single request for exclusion from or objection to the Settlement has been filed. *See* Ex. B, Azari Decl. ¶ 23. Moreover, since the Settlement Website and toll-free telephone helpline went live on July 10, 2025, the Settlement Website has received 14,208 unique visitor sessions and 29,824 web pages have been presented (*id.* ¶¶ 20–21), and the helpline has received a total of 18 calls, totaling 45 minutes (*id.* ¶ 21). As of August 12, 2025, the Settlement Administrator has received a total of 10,173 Claim Forms. *Id.* ¶ 25. Epiq will continue to process Claim Forms through the claims submission period, and Class Counsel will provide the Court with updated numbers at the expiration of that deadline and prior to the Final Approval Hearing.

The lack of opposition to the Settlement further weighs in favor of final approval. *See Bezdek*, 79 F. Supp. 3d at 347 (finding low number of opt-outs and objections was indicative of class members' support as well as the adequacy of the settlement).

**6. Class counsel are highly qualified and well-informed, and their opinion regarding the Settlement is entitled to considerable weight.**

As discussed above and demonstrated in Class Counsel's declarations, Class Counsel have extensive experience litigating and settling complex consumer class actions throughout the country. ECF No. 68, Orenstein Decl. ¶ 5; *see also* Ex. A, Landau Decl. ¶ 37. As such,

their opinion is entitled to "significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (similar).

Based on their collective experience and their work performed in this case, it is Class Counsel's informed opinion that the Settlement represents an exceptional result and is in the best interest of the Class, particularly given the significant risks of continued litigation. *See* Ex. A, Landau Decl. ¶¶ 25–26, 45. In addition, Class Counsel's significant experience in litigating class actions and similar claims provided useful benchmarks to evaluate the merits of this case and the reasonableness of the Settlement here. Ex. A, Landau Decl. ¶¶ 37–38. Accordingly, "[t]he parties . . . have ample factual and legal information with which to evaluate the merits of their competing positions and to 'make a reasoned judgment about the desirability of settling the case on the terms proposed.'" *O'Donnell v. Harris County, Texas*, No. 16-cv-01414, 2019 WL 4224040, at *10 (S.D. Tex. Sept. 5, 2019) (quoting *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)).

**B. The Notice Plan satisfies Rule 23 and due process, and constitutes the best notice practicable.**

In accordance with the Court-approved Notice Plan, on July 16, 2025, Defendant sent 668,469 In-App Notices via push-notification through the Patriots' App to the devices of identified potential Settlement Class Members who were registered users and have push notifications enabled. Ex. B, Azari Decl. ¶ 11. In addition, on July 16, 2025, Defendant sent in-app notices to 1,804,454 unique devices directly to the "My Inbox" section of the Patriots' App for identified potential Settlement Class Members. *Id.*

In addition, a Long Form Notice and Claim Form were mailed to all persons who requested one via the toll-free telephone number or other means. *Id.* ¶ 12. As provided for in the Notice Plan, Epiq used targeted digital advertising—targeted to selected target audiences

and designed to encourage participation by Settlement Class Members—on the Google Display Network and YouTube to reach potential Class Members nationwide. *Id.* ¶¶ 13–15. Moreover, Epiq sponsored search listings that ran on the three most highly visited internet search engines—Google, Yahoo!, and Bing—to make facilitate potential Class Members' locating the Settlement Website. *Id.* ¶ 18. Those sponsored search listing advertisements generally appeared at the top of the visitor's website page before the list of search results or in the upper right-hand column of their web-browser screen. *Id.*

The above Notices provided a detailed summary of the relevant information about the Settlement, including the Settlement Website address and how Settlement Class Members can file a Claim Form online or by mail. *Id.* ¶ 24.

Epiq also established a dedicated website for the Settlement on July 10, 2025. *Id.* ¶ 20. Settlement documents are posted on the Settlement Website, including the Settlement Agreement, Preliminary Approval Order, Long Form Notice, Claim Form, and other case-related documents. *Id.* In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members can opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.* Settlement Class Members can also file a Claim Form on the Settlement Website. *Id.* The Settlement Website address was prominently displayed in all notice documents. *Id.* As of August 12, 2025, there have been 23,430 unique visitor sessions to the Settlement Website, and 29,824 web pages have been presented. *Id.*

A toll-free telephone number was established by Epiq on July 10, 2025 for the Settlement. *Id.* ¶ 21. Callers are able to hear an introductory message, have the option to

learn more about the Settlement in the form of recorded answers to FAQs, and to request a Claim Package be mailed to them. *Id.* This automated telephone system is available 24 hours per day, 7 days per week. *Id.* The toll-free telephone number was prominently displayed in all notice documents. *Id.* As of August 4, 2025, there have been 10 calls to the toll-free telephone number representing 29 minutes of use. *Id.*

The deadline for Settlement Class Members to file a Claim Form is November 23, 2025. *Id.* ¶ 25. As of August 12, 2025, Epiq has received 10,173 Claim Forms. *Id.* Since the November 23, 2025 Claims Deadline has not yet passed, these numbers are preliminary. *Id.* Epiq is in the process of conducting a complete quality control review of Claim Forms received. *Id.*

The notice provided to Settlement Class Members fulfills all of the requirements of Rule 23 and due process and constitutes the best notice practicable under the circumstances.

## VI. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

In the context of settlement, "it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members." *Lupron(R) Mktg.*, 228 F.R.D. at 88 ("This cautionary approach notwithstanding, the law favors class action settlements."); *Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F. Supp. 3d 208, 212 (D. Mass. 2021) (same).

Here, the Court determined that it likely will be able to certify the Settlement Class for purposes of judgment on the proposed Settlement, concluding after a thorough analysis that the requirements of Rule 23(a) and (b)(3) were satisfied:

> [T]he prerequisites [of Rule 23(a) and (b)(3)] have been met, including (1) that the Settlement Class is so numerous that joinder of all members is impracticable; (2) that there are questions of law and fact common to members of the Settlement Class that predominate over questions

> affecting only individual members (e.g., whether Defendant unlawfully disclosed to third parties Plaintiff's and Settlement Class Members' personally identifiable information without consent in a manner that violated the Video Privacy Protection Act, 18 U.S.C. § 2710, and whether Plaintiff and the Settlement Class Members are entitled to uniform statutory damages under the VPPA); (3) that Plaintiff's claims are typical of the claims of the Settlement Class; (4) that Plaintiff and his counsel will fairly and adequately protect the interests of the Settlement Class; (5) that Defendant's alleged conduct is generally applicable to the Class, so final injunctive relief is appropriate with respect to the Settlement Class as a whole; (6) that common issues of law and fact predominate for settlement purposes; and (7) that a settlement class action is a superior method of fairly and efficiently adjudicating this Action.

ECF No. 70, Preliminary Approval Order ¶ 7.

The facts supporting class certification remain unchanged. Accordingly, for these same reasons, the Court should find the Settlement Class satisfies the heightened scrutiny of Rule 23 and certify the Settlement Class.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) certifying the Settlement Class; (iii) finding that the Notice Plan satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances; and (iv) entering final judgment.

Dated: August 13, 2025

Respectfully submitted,

**Plaintiff Anthony Serra**

*/s/ Nathaniel L. Orenstein*
Nathaniel L. Orenstein (BBO #664513)
Patrick T. Egan (BBO #637477)
Christina L. G. Fitzgerald (BBO #709220)

**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
norenstein@bermantabacco.com
pegan@bermantabacco.com
cfitzgerald@bermantabacco.com

Kevin Landau
Brett Cebulash
Joshua O. Hall
**TAUS, CEBULASH & LANDAU, LLP**
123 William Street, Suite 1900A,
New York, NY 10038
Tel: 212-931-0704
klandau@tcllaw.com
bcebulash@tcllaw.com
jhall@tcllaw.com

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
Joe E. Nelson
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
jnelson@gustafsongluek.com

Kenneth A. Wexler
Justin N. Boley
Zoran Tasić
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450

Chicago, IL 60606
Tel: 312-346-2222
Fax: 312-346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Nathaniel L. Orenstein, hereby certify that on August 13, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: August 13, 2025

*/s/ Nathaniel L. Orenstein*
Nathaniel L. Orenstein