**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANTHONY SERRA, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEW ENGLAND PATRIOTS LLC,<br><br>Defendant. | Case No.: 4:24-cv-40022-MRG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARD FOR THE SETTLEMENT CLASS REPRESENTATIVE**

# TABLE OF CONTENTS


I. INTRODUCTION ..................................................... 1

II. OVERVIEW OF THE LITIGATION ..................................................... 2

A. Summary of Plaintiff's Allegations ..................................................... 2

B. Negotiation and Settlement ..................................................... 2

C. Preliminary Approval of the Settlement ..................................................... 3

III. SUMMARY OF THE SETTLEMENT ..................................................... 4

A. The Settlement Class ..................................................... 4

B. Settlement Benefits ..................................................... 4

C. Attorneys' Fees, Litigation Costs, and Service Award ..................................................... 5

IV. THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE AND APPROPRIATE ..................................................... 6

A. Factors Considered by Courts in the First Circuit Confirm that the Fee Request Is Fair and Reasonable. ..................................................... 8

i. The Results Achieved Through Settlement and the Number of Class Members Who Will Benefit from the Settlement Support the Requested Fee. ..................................................... 8

ii. The Skill and Experience of Counsel Support the Requested Fee. ..................................................... 9

iii. The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee. ..................................................... 10

iv. The Complexity and Duration of the Litigation Support the Requested Fee. ..................................................... 12

v. The Risks of Litigation Support the Requested Fee. ..................................................... 13

vi. Awards in Similar Cases Support the Requested Fee. ..................................................... 14

vii. Public Policy Considerations Support the Requested Fee. ..................................................... 15

viii. The Reaction of the Class Supports the Requested Fee. ..................................................... 15

ix. A Lodestar Cross-Check Supports the Requested Fee. ..................................................... 16

B. Class Counsel's Litigation Expenses are Justified and Should be Reimbursed. ..................................................... 17

C. The Requested Service Ward is Reasonable. ..................................................... 18

V. CONCLUSION ..................................................... 19

# TABLE OF AUTHORITIES

Cases | Page(s)

*Applegate v. Formed Fiber Techs., LLC*,
No. 2:10-00473-GZS, 2013 WL 6162596 (D. Me. Nov. 21, 2013) .............................. 14

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
512 F. Supp. 3d 196 (D. Mass. 2020) ....................................................................... 7

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
No. CV 12-11280-DJC, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) ...................... 7, 17

*Bennett v. Roark Capital Grp., Inc.*,
No. 2:09-cv-00421, 2011 WL 1703447 (D. Me. May 4, 2011).................................... 14

*Bettencourt v. Jeanne D'Arc Credit Union*,
No. 17-CV-12548-NMG, 2020 WL 3316223 (D. Mass. June 17, 2020) ...................... 17

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ............................................................ 8, 9, 15, 17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................... 6

*Carlson v. Target Enter., Inc.*,
447 F. Supp. 3d 1 (D. Mass. 2020) ........................................................................... 19

*Fiorentino v. FloSports, Inc.*,
Case No. 1:22-cv-11502-AK, ECF No. 76 (D. Mass. Dec. 6, 2023)............................ 14

*Ford v. Takeda Pharms. U.S.A., Inc.*,
No. 1:21-CV-10090-WGY, 2023 WL 3679031 (D. Mass. Mar. 31, 2023)................... 16

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................................... 7

*Gordan v. Mass. Mutual Life Ins. Co.*,
No. 13-cv-30184-MAP, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) .................... 9, 14

*Hill v. State St. Corp.*,
No. CIV.A. 09-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015).... 10, 13, 17, 18

*In re Am. Dental Partners, Inc. Sec. Litig.*,
No. 08-10119-RGS, 2010 WL 1427404 (D. Mass. Apr. 9, 2010) .................................. 6

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ......................................................................................... 7

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
370 F. Supp. 2d 320 (D. Me. 2005) ............................................................................ 18

*In re Intuniv Antitrust Litig.*,
No. 16-CV-12396-ADB, 2022 WL 398744 (D. Mass. Jan. 26, 2022) .......................... 19

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 WL 2006833 (D. Mass. Aug. 17, 2005) ................................................................ 7

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. ........................................................................................................... 18, 19

*In re Netflix Priv. Litig.*,
No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................... 14

*In re Neurontin Mktg. & Sales Practices Litig.*,
58 F. Supp. 3d 167 (D. Mass. 2014) ............................................................................. 7

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ............................................................................. 15

*In re Relafen Antitrust Litig.*,
231 F.R.D. ............................................................................................ 7, 14, 16, 17

*In re StockerYale, Inc. Sec. Litig.*,
No. 5:11-cv-00379-EJD, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) .......................... 14

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) ........................................................................................... 6

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ...................................................................... 7, 14

*In re Volkswagen & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015) ............................................................................ 16

*In re Xcel Energy, Inc., Sec., Derivative & "ERI*SA" Litig.,
364 F. Supp. 2d 980 (D. Minn. 2005) ........................................ 10

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
No. 17-cv-10219-JGD, 2017 WL 6460244 (D. Mass. June 8, 2017) ........................................ 18

*Lionbridge Techs., LLC v. Valley Forge Ins. Co.*,
No. CV 20-10014-PBS, 2021 WL 8999590 (D. Mass. May 18, 2021) ........................................ 16

*McCormick v. Festiva Dev. Grp., LLC*,
No. 2:09-cv-00365-GZS, 2011 WL 2457883 (D. Me. June 20, 2011) ........................................ 14

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ........................................ 6

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
No. 05-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ........................................ 17

*Roberts v. TJX Companies, Inc.*,
No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .................. 8, 13, 14, 17

*Schwartz v. TXU Corp.*,
No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................................ 10

*Sylvester v. CIGNA Corp.*,
401 F. Supp. 2d 147 (D. Me. 2005) ........................................ 14

*Venegas v. Global Aircraft Service, Ins.*,
No.2:14-cv-249-NT, 2017 WL 2730025 (D. Me. June 26, 2017) ........................................ 18

Statutes

28 U.S.C. § 1715 ........................................ 8

Rules

Federal Rule of Civil Procedure 23 ........................................ 8, 11

Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) ........................................ 8

Federal Rules of Civil Procedure 23(h) ........................................ 11

## I. INTRODUCTION

As detailed in the concurrently filed Memorandum in Support of Motion for Final Approval of Class Action Settlement, Plaintiff Anthony Serra ("Plaintiff" or "Settlement Class Representative") has reached a Settlement with Defendant New England Patriots, LLC, ("the Patriots" or "Defendant"; collectively with Plaintiff, the "Parties") that provides significant benefits, both monetary and non-monetary, to Settlement Class Members.[1] More specifically, the Settlement provides for a $2.16 million non-reversionary common fund (the "Settlement Fund") for the benefit of Settlement Class Members. In addition, the Settlement requires Defendant to suspend operation of Rover's SDK and Google's Anvato API (collectively, the "APIs") on its New England Patriots App (the "Patriots App") in compliance with the Video Privacy Protection Act ("VPPA")—i.e., to the extent that they transmit Precise Geolocation data in connection with users' viewing of pre-recorded videos—thereby providing Settlement Class Members with valuable injunctive relief.

As compensation for their efforts in successfully litigating this action and in accordance with the Settlement terms, Class Counsel respectfully request attorneys' fees of $720,000.00 (which is one-third of the Gross Settlement Fund) plus interest and reimbursement of Class Counsel's $39,855.06 out-of-pocket litigation costs. Class Counsel also seek a service award for the Settlement Class Representative in the amount of $5,000 in recognition of his role in prosecuting the litigation on behalf of the Settlement Class.

[1] See Class Action Settlement Agreement (ECF No. 68-1) (the "Settlement"). Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement

The requested attorneys' fees, litigation costs, and service award are fair and reasonable based on, among other things, the relief obtained in this action; the skill, time, and effort required to obtain such relief; the complex legal issues and technical matters presented; the contingent nature of the representation; the risks assumed; customary fees and awards in similar actions; and the favorable response from the Settlement Class. Thus, for the reasons stated herein, Class Counsel and Plaintiff respectfully request that the Court approve the requested attorneys' fees, litigation costs, and service award.

## II. OVERVIEW OF THE LITIGATION

### A. Summary of Plaintiff's Allegations

Plaintiff filed this case on behalf of himself and similarly situated individuals on February 1, 2024. ECF No. 1. Plaintiff alleges that Defendant installed and incorporated the APIs on the Patriots App. ECF No. 1 ¶¶ 13–59; that the APIs allowed Defendant, Google, and Rover to track consumers' precise geolocation, the videos they've watched, and build detailed profiles for Patriots App users to facilitate targeted advertising services. *Id.* ¶¶ 25–43, 44–53; and that Defendant's use of the APIs on the Patriots App violates the VPPA. Defendant filed a motion to dismiss on April 30, 2024. ECF No. 45. Plaintiff filed a response to the motion to dismiss on June 14, 2024, and provided supplemental authority on November 25, 2024. ECF Nos. 50, 56.

### B. Negotiation and Settlement

The parties negotiated a resolution to this case while Defendant's motion to dismiss was pending. During negotiations, Defendant provided Plaintiff with information about how the App operated during the relevant time period, the information that Defendant

received through the Patriots App, the third-party technologies that allegedly received Plaintiff's personally identifying information and the information they received, and the potential class size. Landau Decl. ¶ 11. The parties extensively discussed the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *Id.* These discussions took place over months directly between counsel and were at all times at arms' length. The parties reached an agreement in principle on January 31, 2025. *Id.* On February 3, 2025, the parties filed a joint motion to stay the case to finalize settlement negotiations, which the Court granted the following day. ECF Nos. 58–59.

**C. Preliminary Approval of the Settlement**

On May 8, 2025, Plaintiff filed a motion and supporting memorandum of law for preliminary approval of the settlement the parties had reached. ECF Nos. 66–67. The Court granted preliminary approval of the settlement on May 30, 2025, holding, *inter alia*:

> [T]he Court will likely be able to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class. The Court further finds that the Settlement substantially fulfills the purposes and objectives of the class action and provides beneficial relief to the Settlement Class, especially considering the risks and delay of continued litigation. The Court also finds that the Settlement Agreement (a) is the result of arm's-length negotiations involving experienced counsel; (b) is sufficient to warrant notice of the Settlement and the Final Approval Hearing to the Settlement Class; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; and (d) is not a finding or admission of liability by Defendant

ECF No. 70 at 2. The Court further concluded that it would "likely be able to certify the Settlement Class under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), as the prerequisites thereunder have been met." *Id.* at 3. The Court appointed Plaintiff as Class Representative and Nathaniel Orenstein, Patrick Egan, and Christina Fitzgerald of Berman

Tabacco; Kevin Landau and Brett Cebulash of Taus, Cebulash & Landau, LLP; Daniel Hedlund and Daniel Nordin of Gustafson Gluek, PLLC; and Kenneth Wexler, Justin Boley, and Zoran Tasić of Wexler Boley & Elgersma LLP as Class Counsel. *Id.* at 4.

## III. SUMMARY OF THE SETTLEMENT

### A. The Settlement Class

The Settlement Class is comprised of:

> All individuals residing in the United States who are or have been users of the Patriots App with location services enabled, and who requested or obtained any prerecorded (including on-demand replay) videos available on the Patriots App, during the Class Period.[2]

ECF No. 70 at 3.

### B. Settlement Benefits

The Settlement provides Settlement Class Members with both monetary and non-monetary benefits. Defendant has agreed to pay $2,160,000 to create a non-reversionary common fund for the benefit of Class Members (the "Settlement Fund"). Settlement, ECF No. 68-1, ¶¶ 1.33, 1.36. Settlement Class Members who submit valid claims will receive a claims-made *pro rata* payment after the deduction of settlement-related costs, including the expenses of the settlement administrator and the costs of notice to the Class, and any Court-awarded attorneys' fees, expense reimbursements, and named plaintiff service

[2] "Excluded from the Settlement Class are (1) any judge presiding over this action, the judge's staff, and members of the judge's immediate family; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors, or assigns of any such excluded persons." ECF No. 70 at 3.

award. *Id.* ¶¶ 1.17, 2.1.2–2.1.3. In the event residual funds remain after a secondary distribution, those residual funds will be disbursed as a *cy pres* award to a non-sectarian and/or not-for-profit organization recommended by Class Counsel and approved by the Court. *Id.* ¶ 2.1.3. No money will revert to Defendant. *Id.*

The Settlement requires Defendant to implement meaningful business changes designed to remediate the alleged VPPA violations going forward. Per the terms of the Settlement, Defendant must suspend any known transmission by the Patriots App to Google and Rover of Precise Geolocation data in connection with a users' viewing of prerecorded materials (to the extent that any is occurring), unless and until the VPAA is amended, repealed, or otherwise invalidated as to the Released Claims. *Id.* ¶ 2.2

In exchange for the relief described above, Plaintiff and the Class shall release all claims that have or could have been asserted against Defendant relating to the facts, transactions, or events alleged in this action. *Id.* ¶¶ 3.1–3.2

### C. Attorneys' Fees, Litigation Costs, and Service Award

The Settlement Agreement provides that Class Counsel may seek an award of reasonable attorneys' fees and reimbursement of their litigation costs from the Settlement Fund, in an aggregate amount not to exceed one-third thereof. *Id.* ¶ 8.1. The Settlement Agreement also provides that Class Counsel may seek a service award for the Class Representative in an amount not to exceed $5,000. *Id.* ¶ 8.3. In accord with the foregoing provisions, Class Counsel is seeking (i) attorneys' fees of $720,000.00 (one-third of the Settlement Fund); (ii) reimbursement of litigation costs of $39,855.06; and (ii) a $5,000 service award for the Class Representative.

## IV. THE REQUESTED AWARD OF ATTORNEYS' FEES IS REASONABLE AND APPROPRIATE

Fed. R. Civ. P. 23 provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). In accord with Rule 23, the Supreme Court has held that where a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

The "common-fund" doctrine allows counsel to draw a reasonable fee as a percentage of the fund created by a settlement for the benefit of the class. *Boeing*, 444 U.S. at 478. As held by the First Circuit, the "percentage of fund" approach offers distinct advantages, including: (1) it is less burdensome to administer; (2) it reduces the possibility of collateral disputes; (3) it enhances the efficiency throughout the litigation; (4) it is less taxing on judicial resources; and (5) it better approximates the workings of the marketplace. *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995).

For these reasons, the First Circuit has stated that the "use of the [percentage of fund] method in common fund cases is the prevailing praxis." *Id.*; *see also In re Am. Dental Partners, Inc. Sec. Litig.*, No. 08-10119-RGS, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010) ("In common fund cases, the trend increasingly favors the calculation of a fee award by use of the percentage of the fund (POF) method."). And, "[a]lthough the First Circuit

has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. CV 12-11280-DJC, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017).[3]

In weighing an appropriate attorney fee award under a common fund request, the First Circuit has not set forth a fixed set of factors, however, courts generally consider the Goldberger factors: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (citing *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

---

[3] Generally, "the expectation [is] that, absent unusual circumstances, the percentage will decrease as the size of the fund increases." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. at 81 ("There are also several cases that suggest that the standard percentage is generally lower as the common fund increases."). Thus, it is the "mega funds," those in excess of $50 million, which tend to be at the low end of this sliding scale. *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 217 (D. Mass. 2020), aff'd in part, appeal dismissed in part sub nom. *Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022) (awarding 20% of the $300,000,000 common fund, or $60,000,000, and finding it is within the reasonable range and most appropriate); *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 940 (N.D. Ill. 2022), appeal dismissed sub nom. *In re Tiktok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) ("Although many sliding-scale cases involve large fund sizes, many courts confronted with settlement funds in the tens of millions do not use a sliding-scale formula.").

The Settlement here creates a common fund of $2,160,000. Class Counsel requests an award of attorneys' fees in the amount of $720,000.00 plus interest, equal to one third of the fund, for their efforts on behalf of the Settlement Class. This amount is reasonable, fair, and fully justified.

### A. Factors Considered by Courts in the First Circuit Confirm that the Fee Request is Fair and Reasonable.

Applying the guideposts referenced above, Class Counsel's fee request is fair and reasonable. *See e.g. Roberts v. TJX Companies, Inc.*, No. 13-cv-13142, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016).

#### i. The Results Achieved Through Settlement and the Number of Class Members Who Will Benefit from the Settlement Support the Requested Fee.

The Settlement yields significant and valuable benefits for the Settlement Class, especially when considering the costs, risks, and delay of continued litigation, trial, and possible appeals. *See* Plaintiff's Memorandum in Support of Motion for Final Approval, concurrently filed herewith. Specifically, the Settlement establishes a non-reversionary common fund of $2.16 million to pay all valid claims, the cost of settlement administration, and attorneys' fees and costs. In addition to these monetary benefits, the Settlement provides for meaningful injunctive relief in the form of business practice changes designed to remediate the alleged VPPA violations going forward: Defendant agrees to suspend any known transmission by the Patriots App to Google and Rover of Precise Geolocation data in connection with a users' viewing of prerecorded materials (to the extent that any was occurring). This injunctive relief adds substantial value to the Settlement. *See, e.g.*, *Bezdek*

*v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346 (D. Mass. 2015), aff'd, 809 F.3d 78 (1st Cir. 2015) ("Injunctive relief has been recognized as a meaningful component of a settlement agreement, particularly where it mimics the injunctive relief that the plaintiffs could achieve following trial."); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-cv-30184-MAP, 2016 WL 11272044, at *1 (D. Mass. Nov. 3, 2016) (finding the affirmative relief achieved in addition to the monetary benefits "make the true value of the settlement far higher."). These results were achieved through the work and skill of Class Counsel and will benefit all Settlement Class Members regardless of whether they file a claim form.

In short, this Settlement stands to provide Settlement Class Members with substantial benefits now and to avoid the risk and uncertainty of further litigation, as well as a possible trial. Accordingly, consideration of this factor weighs in favor of Class Counsel's fee request. *Gordan*, 2016 WL 11272044, at *2.

**ii. The Skill and Experience of Counsel Support the Requested Fee.**

The prosecution and management of a complex class action requires unique legal skills and abilities, as do claims applying the VPPA to the use of APIs. As demonstrated by Class Counsel's declarations and firm resumes, Class Counsel are experienced and skilled practitioner firms in the consumer protection class action field, and have long and successful track records in such cases. Landau Decl. ¶¶ 39, 43. Their willingness and ability to undertake complex and difficult cases such as this and their commitment to this case added valuable experience to this litigation, as well as leverage in the settlement negotiations. *See Bezdek*, 79 F. Supp. 3d at 350 (finding skill of lawyers "nationally known

for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Defendants' attorneys . . . consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion."). Here, Defendant has been represented by highly experienced lawyers throughout the litigation from Paul, Weiss, Rifkind, Wharton & Garrison LLP, a well-respected law firm with more than 1000 attorneys in a variety of areas. *See* https://www.paulweiss.com/about-the-firm/our-firm/about-paul-weiss. Notwithstanding this formidable opposition, Class Counsel developed a strong case and negotiated settlement terms that are highly favorable to Settlement Class Members. *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

**iii. The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee.**

The extensive time and effort expended by Class Counsel in prosecuting the litigation and achieving the Settlement also establish that the requested fee is justified and reasonable. *See Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at

*19 (D. Mass. Jan. 8, 2015). Class Counsel's declarations detail the substantial efforts of Class Counsel in prosecuting Plaintiff's claims. In brief, Class Counsel vigorously litigated this case by performing such tasks as: (i) conducting a thorough pre-suit investigation that resulted in the preparation of a detailed complaint; (ii) analyzing and responding to the legal arguments raised Defendant's motion to dismiss; (iii) gathering Plaintiff's documents and relevant information; (iv) preparing for and engaging in extensive negotiations; (v) requesting and reviewing relevant informal discovery during negotiations; (vii) achieving a very favorable Settlement on behalf of the Settlement Class and (viii) negotiating comprehensive settlement papers and working with the Settlement Administrator to implement the Notice Plan. *See* Landau Decl. ¶ 24. Class Counsel's efforts demonstrate that they vigorously and zealously represented the Class.

Collectively, based on their audited time records, Class Counsel have devoted 828.85 hours to the prosecution of this action. *See* Landau Decl. ¶¶ 47–48. In addition, Class Counsel will devote further time and effort appearing at the final approval hearing, responding to inquiries from Settlement Class Members, addressing any objections that could arise, and monitoring the distribution of settlement payments by the Settlement Administrator until the fund is expended and closed. The substantial time and effort devoted to this case, taken with the risk of no recovery to the Class whatsoever, support the requested award in this case and demonstrate that the requested fee here has been well earned.

### iv. The Complexity and Duration of the Litigation Support the Requested Fee.

The complexity and duration of the litigation also weigh in favor of the requested fee. The VPPA claims in this action involve complicated issues concerning Defendant's business and practices related to its use of the APIs and consumers' privacy rights. Thus, Class Counsel were required to develop an understanding of Defendant's use of technology, its video content, class size, class damages, and more. Throughout the litigation, Defendant has vigorously denied Plaintiff's allegations of wrongdoing, filing a motion to dismiss the complaint, and Plaintiff anticipates that Defendant would continue to defend its position should the case be litigated further. Moreover, claims applying the VPPA to operation of APIs' transmission of location data are still relatively novel.

While formal discovery in this litigation had not yet commenced, the Parties informally exchanged information to allow Class Counsel to assess the strengths and weaknesses of the VPPA claims, as well as the Patriots' defenses, and to make an informed assessment of the value of Plaintiff's claims. For example, during negotiations, the parties exchanged information and supporting materials outlining their respective legal positions regarding the merits of Plaintiff's claims, Rule 23 considerations, and the scope of damages. Landau Decl. ¶ 11. Thus, notwithstanding the novelty and complexities of Plaintiff's claims, Class Counsel, through extensive factual investigation and targeted informal discovery, were able to skillfully and efficiently negotiate a successful resolution on behalf of the Settlement Class. *Id.* ¶¶ 11–12. Accordingly, the magnitude and

complexity of the issues presented and the duration of the litigation support the conclusion that the requested fee is fair and reasonable.

**v. The Risks of Litigation Support the Requested Fee.**

A case undertaken on a contingent fee basis requires commitment of time and resources in the face of significant risks of loss and/or delay. As such, the risk undertaken in the litigation is a key factor in determining an appropriate fee award. *See Roberts*, 2016 WL 8677312, at *13 ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill*, 2015 WL 127728, at *18 (considering "contingency risk in awarding attorneys' fees" when counsel "litigated the [a]ction on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class").

Here, in pursuing this litigation on a contingency basis, Class Counsel understood that it was undertaking expensive and complex litigation with no guarantee of receiving compensation for the enormous investment in time and money that the case would require. Landau Decl. ¶ 45.

Moreover, the risks involved in this litigation were plentiful. Plaintiff faced very significant risks to withstanding a challenge to the pleadings, to certifying and maintaining a class, and eventually to proving liability and damages on relatively untested VPPA claims at trial. *Landau Decl.* ¶¶ 25–31. Absent the Settlement, Plaintiff would have to conduct formal discovery, which would involve the uncertain process of obtaining relevant information from Defendant and pursuing subpoenas against third parties like Google and Rover, substantially increasing litigation costs. Thus, formal discovery, pretrial motion

practice, trial and appeal would involve potentially several additional years of litigation and could potentially deprive the Class of any relief.

Under these circumstances, the requested fee is fully appropriate.

**vi. Awards in Similar Cases Support the Requested Fee.**

Awards in similar cases support the requested fee. Indeed, the fee requested in this case is in accord with awards in other class action cases involving VPPA claims. *See Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502-AK, ECF No. 76, at 5 (D. Mass. Dec. 6, 2023) (awarding $875,000 of the $2.65 million settlement fund as attorneys' fees and costs in VPPA case); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 940 (N.D. Ill. 2022) (awarding $29,279,203.44—one-third of the $87,843,787.95 net common fund—in attorneys' fees in case involving VPPA claim); *In re Netflix Priv. Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *9 (N.D. Cal. Mar. 18, 2013) (awarding attorneys' fees of $2.250 million, plus the $25,000 in costs and expenses in case involving VPPA claims).

Additionally, the requested fee is within the range of fee awards in class action cases in this District and the First Circuit. *Roberts*, 2016 WL 8677312, at *9 (awarding one-third of $4.75 million settlement); *Gordan*, 2016 WL 11272044, at *2 ("[T]he one-third fee requested here is fair and reasonable."); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85-89 (D. Mass. 2005) (approving 33% of $67 million settlement as a percentage of the fund); *In re StockerYale, Inc. Sec. Litig.*, No. 5:11-cv-00379-EJD, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (awarding fees in the amount of 33% of settlement fund); *McCormick v. Festiva Dev. Grp., LLC*, No. 2:09-cv-00365-GZS, 2011 WL 2457883, at *1

(D. Me. June 20, 2011) (awarding fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, No. 2:10-00473-GZS, 2013 WL 6162596, at *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (same); *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005) (awarding one-third of the $2.3 million settlement as a percentage of the fund).

Thus, Class Counsel's fee request is directly in line with awards in similar cases and weighs in favor of the requested fee.

**vii. Public Policy Considerations Support the Requested Fee.**

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 463 (D.P.R. 2011). Here, given the risk and expense in pursuing class members' VPPA claims, "it would likely not be economical for an individual Class Member to pursue such litigation on their own." *Id.* Moreover, the VPPA claims seek to redress consumers' fundamental privacy rights. Thus, this class action serves important public policy of ensuring that consumers' privacy rights be protected even where individual damages are minimal. Thus, the requested fee here serves an important public policy of ensuring that consumer claims can be pursued by experienced and competent counsel.

**viii. The Reaction of the Class Supports the Requested Fee.**

As of August 13, 2025, no Settlement Class Member has objected to any portion of the Settlement, including Class Counsel's fee request, nor requested to be excluded from

the Settlement. Azari Decl. ¶ 23. Thus, to date, the reaction of the Settlement Class has been favorable. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 351.

**ix. A Lodestar Cross-Check Supports the Requested Fee.**

The requested attorneys' fees and expenses are reasonable under the lodestar method. "The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 81. Nonetheless, courts often consider the lodestar when determining the reasonableness of a fee calculated as a percentage of the fund. *See id.* In addition, multipliers of lodestar amounts is "an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees." *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015) (collecting cases).

Class Counsel's lodestar in this action is $635,182.25, which is based on 828.85 audited hours of attorney and professional staff time. Landau Decl. ¶¶ 47–48. The rates of the attorneys are fully supported by the skill and experience of Class Counsel and are within the market rate for their services. *See Ford v. Takeda Pharms. U.S.A., Inc.*, No. 1:21-CV-10090-WGY, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) (approving hourly rates of $1,370 for attorneys with at least 25 years of experience; $1,165 for attorneys with 15–24 years of experience; $840 for attorneys with 5–14 years of experience; $635 for attorneys with 0–4 years of experience; and $425 for paralegals and law clerks); *Lionbridge Techs., LLC v. Valley Forge Ins. Co.*, No. CV 20-10014-PBS, 2021 WL 8999590, at *1 (D. Mass. May 18, 2021), aff'd, 53 F.4th 711 (1st Cir. 2022) (noting defense counsel

charged hourly rates for partners of $1,475 and associates ranged from at least $700 to $900).

Based on the lodestar to date, the lodestar results in a multiplier of 1.13. This multiplier is well within the range of what other courts in this district and the First Circuit have approved. *See Bettencourt v. Jeanne D'Arc Credit Union*, No. 17-CV-12548-NMG, 2020 WL 3316223, at *3 (D. Mass. June 17, 2020) (finding multiplier of 1.20 was "well within the range of multipliers typically allowed by this Court (1x to 2.7x)"); *Roberts*, 2016 WL 8677312, at *13 (court approved a multiplier of 1.96); Bacchi, 2017 WL 5177610, at *5 (approving multiplier of 1.31); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving lodestar multiplier of about 8.3); *In re Relafen*, 231 F.R.D. at 82 (noting that multipliers have ranged from 1.0 to 4.0 and concluding that a multiplier of 2.02 was appropriate).

**B. Class Counsel's Litigation Expenses are Justified and Should be Reimbursed.**

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill*, 2015 WL 127728, at *20. Here, Class Counsel have incurred a total of $39,855.06 in out-of-pocket litigation expenses. Landau Decl. ¶ 51. More particularly, over the course of this litigation, Class Counsel incurred the following costs, among others: filing and pro hac vice fees, experts and consultants, federal express and courier services, computer research, and photocopying and printing. *See id.* These expenses were reasonably incurred in the prosecution and settlement of this Action. Accordingly, reimbursement of

these out-of-pocket litigation expenses is appropriate. *See Bezdek*, 79 F. Supp. 3d at 351–52 (finding costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings reasonable and awarding $61,674.44 in incurred litigation expenses); *Hill*, 2015 WL 127728, at *21 (finding costs for experts, creating and maintaining an electronic database for review of documents, conducting online legal and factual research, court fees, court reporters, out-of-town travel, and copying were "the types of expenses that are necessarily incurred in litigation of this type" and awarding $995,297.89 in litigation costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F. Supp. 2d 320, 322 (D. Me. 2005) (awarding $119,185.15 in costs "for such items as overtime, telephone, fax, postage, FedEx, photocopying, court fees, service of process, etc.").

**C. The Requested Service Award is Reasonable.**

"A named plaintiff is a necessary component of any class action, and thus, a service award may be appropriate to induce an individual to take part in the suit." *Venegas v. Global Aircraft Service, Ins.*, No. 2:14-cv-249-NT, 2017 WL 2730025, at *4 (D. Me. June 26, 2017). Service awards "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017); *accord In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. at 98.

Plaintiff has been engaged with this case from the outset, he has been in regular contact with counsel and aided their investigation. Landau Decl. ¶ 54. Specifically, Plaintiff helped counsel draft the complaint by providing details of his experience and relevant facts and events; he reviewed and provided documents and information from his mobile phone and his account with the Patriots App; he has communicated throughout the litigation with Class Counsel via telephone calls and emails; and he oversaw the settlement of this Action and the terms negotiated. *See id.* But for Plaintiff's efforts, and his desire and willingness to stick with this case and obtain relief for others, the Settlement Class here would have received nothing. An incentive award of $5,000 to Plaintiff is reasonable, fair, and within the range of awards approved in other class actions. *See, e.g., Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) (approving an incentive award of $7,500 to named plaintiff); *In re Intuniv Antitrust Litig.*, No. 16-CV-12396-ADB, 2022 WL 398744, at *2 (D. Mass. Jan. 26, 2022) (granting $5,000 service award to each named plaintiff).

## V. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant this motion and (i) award attorneys' fees of $720,000.00 plus interest (one-third of the Settlement Fund), to Class Counsel; (ii) award $39,855.06 to reimburse Class Counsel for their out-of-pocket expenses; and (iii) grant a service award of $5,000 to Plaintiff.

Dated: August 13, 2025

*/s/ Nathaniel L. Orenstein*
Nathaniel L. Orenstein
(BBO #664513)
Patrick T. Egan (BBO #637477)
Christina L.G. Fitzgerald

(BBO #709220)
BERMAN TABACCO
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
pegan@bermantabacco.com
norenstein@bermantabacco.com
cfitzgerald@bermantabacco.com

Daniel C. Hedlund
(admitted *pro hac vice*)
Daniel J. Nordin
(admitted *pro hac vice*)
GUSTAFSON GLUEK PLLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Telephone: 612-333-8844
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com

Kenneth A. Wexler
(admitted *pro hac vice*)
Justin N. Boley
(admitted *pro hac vice*)
Zoran Tasić
(admitted *pro hac vice*)
WEXLER BOLEY &
ELGERSMA LLP
311 S. Wacker Drive, Suite 5450
Chicago, IL 60606
Tel: 312-346-2222
Fax: 312-346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
zt@wbe-llp.com

Kevin Landau
(admitted *pro hac vice*)
Brett Cebulash
(admitted *pro hac vice*)

TAUS, CEBULASH & LANDAU LLP
123 William Street, Suite 1900A,
New York, NY 10038
Tel: 212-931-0704
klandau@tcllaw.com
bcebulash@tcllaw.com

***Attorneys for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I, Nathaniel L. Orenstein, hereby certify that on August 13, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: August 13, 2025

*/s/ Nathaniel L. Orenstein*
Nathaniel L. Orenstein